**Matthew C. Bures (SBN 143361)**
*mcbures@wolfewyman.com*
**Christopher T. Johnson (SBN 209685)**
*ctjohnson@wolfewyman.com*
**WOLFE & WYMAN LLP**
**2301 Dupont Drive, Suite 300**
**Irvine, California 92612-7531**
**Telephone:  (949) 475-9200**
**Facsimile:   (949) 475-9203**

**Attorneys for Intervenors**
**VIGILANT INSURANCE COMPANY; THE STANDARD FIRE INSURANCE**
**COMPANY; GREAT AMERICAN INSURANCE COMPANY OF NEW**
**YORK, f/k/a/ AMERICAN NATIONAL FIRE INSURANCE COMPANY;**
**CENTURY INDEMNITY COMPANY, as Successor to CCI INSURANCE**
**COMPANY, as Successor to INSURANCE COMPANY OF NORTH**
**AMERICA**

**Attorneys for Defendants**
**THE ESTATE OF BENJAMIN F. FOHRMAN, DECEASED, and THE**
**ESTATE OF ROBERT SCHACK, DECEASED**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF BETTY GOLDBERG, DECEASED and ESTATE OF AL GOLDBERG, DECEASED, by and through their successor in interest Daniel Rubin, | Case No.: 5:14-cv-01872-DSF (AFMx) |
| | Assigned for all purposes to: Judge Dale S. Fischer |
| Plaintiffs, | |
| v. | **INTERVENORS AND DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| GOSS-JEWETT COMPANY, INC, et al., | |
| Defendants. | **[FRCP 56]** |
| | DATE:     April 4, 2016 |
| | TIME:     1:30 p.m. |
| | CTRM:    840 |
| AND RELATED CROSS-ACTIONS AND THIRD-PARTY ACTIONS. | |
| | Trial Date:      10/11/2016 |
| | Action Filed:    9/8/2014 |

///

1

2286971.1

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on **April 4, 2016, at 1:30 p.m.** or as soon thereafter as the matter may be heard, in Courtroom 840 before the Honorable Dale S. Fisher of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California, Intervenors Vigilant Insurance Company; The Standard Fire Insurance Company; Great American Insurance Company of New York, F/K/A American National Fire Insurance Company; Century Indemnity Company, as Successor to CCI Insurance Company, as Successor to Insurance Company of North America ("Intervenors"), and Defendants the Estate of Benjamin F. Fohrman, Deceased, and the Estate of Robert Schack, Deceased ("Defendants") will, and hereby do, move pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order for Summary Judgment in favor of Intervenors and Defendants on Plaintiffs' Complaint, or in the alternative, Partial Summary Judgment, as to all or some of the causes of action asserted in the Complaint.

This Motion will be made on the grounds that there is no genuine dispute as to any material fact and that Intervenors and Defendants are entitled to summary judgment or partial summary judgment as a matter of law on the Complaint of Plaintiffs the Estate of Al Goldberg, Deceased, and the Estate of Betty Goldberg, Deceased (collectively, "Plaintiffs"), on the following grounds:

1.      Plaintiffs have not incurred any response costs recoverable under CERCLA § 107(a) (42 U.S.C. § 9607(a)), and thus cannot obtain recovery under that section;

2.      Plaintiffs have not incurred any response costs recoverable under CERCLA § 107(a) (42 U.S.C. § 9607(a)), and thus cannot obtain declaratory relief under that section;

///

///

2286971.1

3.      Plaintiffs do not face liability for contamination at the property at issue, and thus cannot obtain contribution under CERCLA § 113 (42 U.S.C. § 9613);

4.      Plaintiffs have not incurred any response costs recoverable under the California HSAA, *Cal. Health & Safety Code* §25363(e), and thus cannot pursue recovery under that section;

5.      Plaintiff estates are not "persons" entitled to obtain recovery under the HSAA;

6.      Plaintiffs do not face liability for contamination at the property at issue, and thus have no basis to seek contribution under state law;

7.      Plaintiffs do not face liability for contamination at the property at issue, and thus have no basis to seek contractual indemnity under state law;

8.      Plaintiffs' claims for past response costs and for contractual indemnity are time-barred;

9.      Plaintiffs do not face liability for contamination at the property at issue, and thus have no basis to seek equitable indemnity under state law;

10.     Plaintiffs' indemnity claims are barred by the statute of limitations.

11.    Plaintiffs' indemnity claims are barred by the doctrine of laches.

12.    Plaintiffs do not face liability for contamination at the property at issue, and thus have no basis to seek declaratory relief under CERCLA or state law;

13.     At a minimum, Plaintiffs' recovery is limited to amounts that Plaintiffs can prove they paid for recoverable response costs at the property at issue;

14.    At a minimum, Plaintiffs do not face liability for contamination that existed at the property at issue before Al Goldberg and Betty Goldberg died, and Plaintiffs have no basis for recovering from the defendants with respect to such contamination, under each and every ground set out above;

15.    Plaintiffs cannot recover from the Estate of Benjamin F. Fohrman, Deceased, because Plaintiffs have no evidence that Benjamin F. Fohrman caused or contributed to contamination at the property at issue;

NOTICE OF MOTION FOR SUMMARY JUDGMENT 14 CV 01872

16.  Plaintiffs cannot recover from the Estate of Robert Schack, Deceased, because Plaintiffs have no evidence that Robert Shack caused or contributed to contamination at the property at issue; and

17.  The Estate of Al Goldberg cannot recover because it does not exist and faces no liability.

Intervenors and Defendants' motion will be based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Statement of Undisputed Facts and Conclusions of Law, the Declaration of Matthew C. Bures, the pleadings and papers on file in this action, and on such other and further evidence as may properly come before the Court at the hearing on this motion.

Pursuant to Local Rule 7-3, on December 23, 2015, Intervenors and Defendants served counsel for Plaintiffs with a meet and confer letter outlining this Motion.  On December 29, 2015, counsel met and conferred by telephone and discussed the substance of the Motion, although counsel for Plaintiffs was unable to prepare fully in light of the holidays and agreed to follow up in writing by no later than January 6, 2016.  On January ___, 2016, counsel for Intervenors communicated with Plaintiffs, confirming that the January 6, 2016, letter did not resolve the issues and in the absence of any follow up Intervenors and Defendants would proceed with filing the Motion.

DATED:  March 4, 2016                    WOLFE & WYMAN LLP


By:    _/s/ Matthew C. Bures_____
       MATTHEW C. BURES
       CHRISTOPHER T. JOHNSON
       **Attorneys for Intervenors**
       **VIGILANT INSURANCE COMPANY;**
       **THE STANDARD FIRE INSURANCE**
       **COMPANY; GREAT AMERICAN**
       **INSURANCE COMPANY OF NEW**
       **YORK, f/k/a/ AMERICAN NATIONAL**
       **FIRE INSURANCE COMPANY;**

2286971.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CENTURY INDEMNITY COMPANY, as Successor to CCI INSURANCE COMPANY, as Successor to INSURANCE COMPANY OF NORTH AMERICA**

**Attorneys for Defendants THE ESTATE OF BENJAMIN F. FOHRMAN, DECEASED, and THE ESTATE OF ROBERT SCHACK, DECEASED**

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

NOTICE OF MOTION FOR SUMMARY JUDGMENT 14 CV 01872

2286971.1

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     THE PLAINTIFFS' CLAIMS REMAINING IN THE CASE ..................... 2

III.    STATEMENT OF FACTS ......................................................................... 3

      A.   Al and Betty Goldberg, Goss-Jewett, and Others Formerly
          Operated a Dry Cleaning Supply Business at the Site. ....................... 3

      B.   Al and Betty Goldberg Filed an Action in 1994,  Which
          Remained Inactive for 17 Years. ........................................................ 3

      C.   Al Goldberg Died in 1994, and Betty Goldberg Died in 2003. ............ 3

      D.   In 2012, the DTSC Sent an Order to the Goldberg Family
          Revocable Living Trust Regarding Contamination at the Site. ............ 3

      E.   In 2014, an Entity Called 220 W. Gutierrez, LLC Signed
          Contracts Agreeing to Purchase and Clean Up the Site. ...................... 4

      F.   Daniel Rubin Opened a Probate Estate for Betty Goldberg in
          September 2014, in Order to Sell the Site. .......................................... 5

      G.   In 2014, the Goldberg Estates Sought to Resurrect  the 1994
          Action, and Then Filed This Case. ...................................................... 6

      H.   The Plaintiffs' Discovery Responses Establish that the Plaintiff
          Estates Have Not  Incurred Response Costs at the Site. ...................... 8

IV.    ARGUMENT ............................................................................................ 9

      A.   Standard for Summary Judgment. ....................................................... 9

      B.   The Goldberg Estates Have Not Incurred Liability or Paid Costs
          for the Contamination at Issue. .......................................................... 11

          1.   The Goldberg Estates Do Not Face Liability To the Water
              Board or DTSC Because Another Entity Has Agreed To
              Investigate and Clean Up the Site. ............................................ 11

          2.   The Goldberg Estates Do Not Face Liability To the Water
              Board or DTSC, Because California Code of Civil
              Procedure § 366.2 Bars Suits for Recovery From the
              Estates. ..................................................................................... 12

          3.   The Goldberg Estates Have Produced No Evidence That
              They Have Paid Response Costs at the Site. ............................. 15

      C.   The Estates Cannot Recover Under CERCLA Section 107
          Because they Have Not Incurred and Do Not Face Liability for
          the Underlying Contamination Claims ............................................... 16

i

1. The Plaintiffs Have Not "Incurred" Any Costs at the Site Because They Are Not Liable for Such Costs...........................16

2. The Plaintiffs Have Produced No Evidence That They Incurred Any Recoverable Costs in Connection with the Site. ........................................................................17

D. Plaintiffs' CERCLA Claims for Recovery of Any Costs Allegedly Incurred in the 1990s Are Time-Barred............................18

E. The Goldberg Estates Cannot Recover Under CERCLA § 113, Because the Statutory Requirements are Absent. ...............................19

F. The Goldberg Estates Cannot Recover Under the California Hazardous Substance Account Act.........................................................20

1. The Plaintiffs Have Not "Incurred" Costs Under the HSAA..........................................................................20

2. The HSAA Does Not Authorize Suits By an Estate...............21

G. The Goldberg Estates Cannot Recover Under Their State Law Claims for Equitable or Contractual Indemnity.................................22

1. The Goldberg Estates Do Not Face Liability That Could Give Rise To a Claim for Indemnity. ......................................22

2. The Contractual Indemnity Claim Is Time-Barred. ................23

3. The Indemnity Claims Are Barred by the Doctrine of Laches. ..........................................................................23

H. The Goldberg Estates Are Not Entitled to Declaratory Relief. ..........23

I. Robert Schack or Benjamin Fohrman Are Not Liable to Plaintiffs, Who Admitted They Have No Evidence That Robert Schack or Benjamin Fohrman Caused Contamination at the Site......................24

J. Any Claims by the "Estate of Al Goldberg" Should be Dismissed, Because There is No Such Estate......................................................25

V.   CONCLUSION ...............................................................................25

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

2286971.1

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3

*Adobe Lumber, Inc. v. Hellman*
4      658 F. Supp. 2d 1188 (E.D. Cal. 2009) ........................................20

5
*American Title Ins. Co. v. Lacelaw Corp.*
      861 F.2d 224 (9th Cir. 1988) ........................................10
6

*Anderson v. Liberty Lobby, Inc.*
7      477 U.S. 242 (1986) ........................................10

8
*Basic Management, Inc. v. United States*
      569 F.Supp.2d 1106 (D. Nev. 2008) ........................................17
9

*Castaic Lake Water Agency v. Whittaker Corp.*
10      272 F. Supp. 2d 1053 (C.D. Cal. 2003) ........................................20

11
*Celotex Corp. v. Catrett*
      477 U.S. 317 (1986) ........................................10
12

*Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*
13      710 F.3d 946 (9th Cir. 2013) ........................................16

14
*City of Colton v. American  Promotional Events, Inc.-West*
      614 F.3d 998 (9th Cir. 2010) ........................................24
15

*Cooper Indus., Inc. v. Aviall Services, Inc.*
16      543 U.S. 157 (2004) ........................................19

17
*Exxon Corp. v. Hunt*
      475 U.S. 355 (1986) ........................................19
18

*Humboldt Bank v. Gulf Ins. Co.*
19      323 F.Supp.2d 1027 (N.D. Cal. 2004) ........................................9

20
*In re Dant & Russell, Inc.*
      951 F.2d 246 (9th Cir. 1991) ........................................17
21

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*
22      304 F.3d 829 (9th Cir. 2002) ........................................23

23
*Kotrous v. Goss-Jewett Co. of Northern California*
      523 F.3d 924 (9th Cir. 2008) ........................................19
24

*Lujan v. National Wildlife Federation*
25      497 U.S. 871 (1990) ........................................10

26
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
      475 U.S. 574 (1986).) ........................................10
27

*Missouri Housing Dev. Comm'n v. Brice*
28      919 F.2d 1306 (8th Cir. 1990) ........................................10

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*
  210 F.3d 1099 (9th Cir. 2000) ................................................................. 10

*Palmtree Acquisition Corp. v. Neely*
  2010 WL 3910370 (N.D. Cal. 2010) .................................................. 13, 14

*Pelayo v. City of Downey*
  570 F. Supp. 2d 1183 (C.D. Cal. 2008) ........................................... 12, 21

*Pontiac v. Flores*
  2011 WL 3846878 (E.D. Cal. Aug. 30, 2011) ............................. 13, 14, 17

*Sullins v. Exxon/Mobil Corp.*
  729 F. Supp. 2d 1129 (N.D. Cal. 2010) ................................................ 22

*Trans'-Global LLV v. Detomasi*
  2015 WL 9319322 (N.D. Cal. 2015) ................................................ 13, 14

*Trimble v. ASARCO, Inc.*
  83 F.Supp.2d 1034 (D. Neb. 1999) ................................................ 17, 18

*United States v. Atlantic Research Corp.*
  551 U.S. 128 (2007) ............................................................................ 16, 17

**California Cases**

*American Motorcycle Ass'n v. Superior Court*
  20 Cal. 3d 578 (1978) ................................................................................ 20

*Bay Development, Ltd. v. Superior Court*
  50 Cal. 3d 1012 (1990) .............................................................................. 22

*Bush v. Superior Court*
  10 Cal. App. 4th 1374 (1992) .................................................................... 22

*Dacey v. Taraday*
  196 Cal. App. 4th 962 (2011) .................................................................... 14

*Estate of Bright v. Western Air Lines*
  104 Cal. App. 2d 827 (1951) .............................................................. 12, 21

*Ferraro v. Camarlinghi*
  161 Cal. App. 4th 509 (2008) .................................................................... 14

*Tanner v. Best's Estate*
  40 Cal. App. 2d 442 (1940) ........................................................................ 12

*Western Steamship Lines, Inc. v. San Pedro Peninsula Hosp.*
  8 Cal. 4th 100 (1994) ......................................................................... 20, 22

2286971.1

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

**Rules and Statutes**

Fed. R. Civ. P. 17 ................................................................................................ 14

42 U.S.C. § 9601 ................................................................................................ 19

42 U.S.C. § 9607 .......................................................................................... passim

42 U.S.C. § 9613 .......................................................................................... passim

*Cal. Health & Safety Code § 25300 et seq.* ................................................. 2, 20

*Cal. Health & Safety Code § 25310* ................................................................ 21

*Cal. Health & Safety Code § 25319* ................................................................ 21

*Cal. Health & Safety Code § 25363* ............................................................. 3, 20

*California Code of Civil Procedure § 337* ....................................................... 23

*California Code of Civil Procedure § 366.2* ........................................ 1, 12-14, 17

*California Probate Code § 56* ......................................................................... 21

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case has an unusual roster of parties.  The plaintiffs are the estate of Al Goldberg, who died in 1994, and the estate of Betty Goldberg, who died in 2003. The defendants include Goss-Jewett & Company, Inc., which ceased operations in 1991, and seven of its former directors or officers, three of whom died before the case was filed.  The claims alleged were raised in an earlier suit filed in 1994, which was abandoned for many years until the plaintiffs sought to revive that suit in 2014.

This case is also unusual because the plaintiffs are seeking recovery of costs they did not pay.  Discovery has confirmed the estates have not incurred costs of addressing contamination at the subject property.

What makes the case even more unusual is that the plaintiffs do not face liability for contamination at the subject property, because their *counsel* have agreed to buy the property and pay the cleanup costs at issue.  Partners in the law firm that represents the plaintiffs formed a limited liability company that has signed contracts with the Betty Goldberg estate and the State of California, agreeing to acquire the property and to clean up contamination there.

Moreover, the plaintiff estates face no liability for contamination at the property due to the statute of limitations set out in California Code of Civil Procedure § 366.2.

Because the plaintiffs have not incurred liability for environmental costs at the site, and do not face liability for such contamination, the plaintiffs have no basis or standing to assert claims for cost recovery, contribution, indemnity, or declaratory relief.  The plaintiffs' claims fail for other reasons as well, as detailed below.  For example, their claims for past costs are time-barred under CERCLA.

Accordingly, the Intervenor Insurers and defendants the Estate of Robert Schack and the Estate of Benjamin Fohrman ask the Court to grant summary judgment of the plaintiffs' claims.

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

2286971.1

## II.   THE PLAINTIFFS' CLAIMS REMAINING IN THE CASE

The plaintiffs, Estate of Betty Goldberg, Deceased and Estate of Al Goldberg, Deceased (the "Goldberg Estates" or "Plaintiffs"), plead that their complaint (the "Complaint") was brought "in defense of claims against the estates" by the California Regional Water Quality Control Board (the "Water Board") and the California Department of Toxic Substances Control (the "DTSC").  (*See* Fact No. 1 in the Separate Statement of Undisputed Facts, referred to here by "Fact Nos. ___".)

The Complaint alleges that Al and Betty Goldberg owned property located at 220 W. Gutierrez Street, Santa Barbara, California (the "Site").  (Fact No. 2.) The Complaint further alleges that contamination at the Site was caused by Goss-Jewett & Company, Inc. ("Goss-Jewett"), and its former officers, including Robert W. Schack (deceased) and Benjamin Fohrman (deceased), among others.  (Fact No. 3.)

The Complaint pleads that the Water Board and DTSC "have demanded that Plaintiffs investigate and remediate the Site," referring to (1) a September 29, 1993, Water Board order, (2) a July 17, 2012, DTSC Order, and (3) a January 30, 2014, DTSC letter.  (Fact No. 4.)  The Plaintiffs further allege that they have incurred response costs at the Site, and claim they face further costs.  (Fact No. 5.)

As filed, the Complaint asserted fourteen causes of action.  On December 16, 2014, the Court entered an order granting defendants' motions to dismiss in part, and dismissing certain causes of action.  (Fact Nos. 6 and 7.)  Thus, the Plaintiffs' remaining claims are causes of action for (1) cost recovery under Section 107 of CERCLA, (2) contribution under Section 113 of CERCLA, (3) contribution and indemnity under the California Hazardous Substance Account Act, *Health & Safety Code* sections 25300, *et seq*. (the "HSAA"), (4) equitable indemnity, (5) contractual indemnity, and (6) declaratory relief.

In sum, the Plaintiffs claim that the defendants should bear costs allegedly incurred by the Goldberg Estates in response to Water Board and DTSC orders.

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

**MEMORANDUM OF POINTS AND AUTHORITIES  14 CV 01872**

III.   **STATEMENT OF FACTS**

   A.   **Al and Betty Goldberg, Goss-Jewett, and Others Formerly Operated a Dry Cleaning Supply Business at the Site.**

In 1965, Al and Betty Goldberg applied to the City of Santa Barbara to construct a warehouse, and thereafter operated dry cleaning supply business at the Site.  (Fact No. 8.)  In 1968, the Goldbergs leased the business to Tri-County Sales, Inc. and its principals.  (Fact No. 9.)  The Complaint alleges that Al and Betty Goldberg leased the Site to Tri-County Sales, Goss-Jewett, and various principals of Tri-County Sales and Goss-Jewett, between 1968 and 1991.  (Fact No. 10.)  The Complaint also alleges that operations at the Site between 1968 and 1991 resulted in perchloroethylene ("PCE") contamination.  (Fact No. 11.)

   B.   **Al and Betty Goldberg Filed an Action in 1994, Which Remained Inactive for 17 Years.**

This case is not the first suit regarding environmental conditions at the Site. In June 1994 the Goldbergs filed an action entitled *Goldberg v. Arns, et al.,* Central District of California, Case No. 2:94-cv-03834 (the "1994 Action").  (Fact No. 12.) The claims pled in the present Complaint are essentially identical to the claims pled in the 1994 Action.  (*Compare* the 1994 complaint, Exhibit 1 to the Request for Judicial Notice filed with this motion ("RJN"), with the Complaint, ECF No. 1.)

   C.   **Al Goldberg Died in 1994, and Betty Goldberg Died in 2003.**

Al Goldberg died on September 13, 1994, after the 1994 Action was filed. (Fact No. 13.)  After 1996, the 1994 Action was inactive for more than 17 years. (Fact No. 14.)  Betty Goldberg died on January 14, 2003.  (Fact No. 15.)

   D.   **In 2012, the DTSC Sent an Order to the Goldberg Family Revocable Living Trust Regarding Contamination at the Site.**

In July 2012, nine years after Betty Goldberg had died, the California DTSC sent an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order (the "2012 Order") to "the Al and Betty Goldberg Trust,

3

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW
W&W

1  Betty Goldberg, an individual; [and] Goss-Jewett & Company." (Fact No. 16.)  In

2  the 2012 Order, the DTSC demanded that the recipients respond to contamination at

3  the Site.

4      The DTSC also addressed the Order to Daniel Rubin, who is Al and Betty

5  Goldberg's grandson and is the Trustee of the Goldberg Family Revocable Living

6  Trust.  (Fact Nos. 16-17.)  The 2012 Order originally named Goss-Jewett, through an

7  assignee, but a 2013 amendment deleted Goss-Jewett and its assignee from the list of

8  responsible parties.  (Fact No. 18.)

9      **E.**    <u>**In 2014, an Entity Called 220 W. Gutierrez, LLC Signed Contracts**</u>

10  <u>**Agreeing to Purchase and Clean Up the Site.**</u>

11      On September 25, 2013, a little more than a year after the DTSC sent that

12  2012 Order to Daniel Rubin, an entity named 220 W. Gutierrez, LLC (hereafter, the

13  "Gutierrez LLC") was registered as a Delaware limited liability company.  (Fact No.

14  19.)  The address of the contaminated Site at issue in this case is 220 W. Gutierrez

15  Street, Santa Barbara, California.  (Fact Nos. 2-3.)

16      The Gutierrez LLC has two members, John R. Till and Bret A. Stone, who are

17  also partners in the Paladin Law Group, the law firm representing the Plaintiffs in

18  this case.  (Fact No. 20-21.)  The Gutierrez LLC was formed by the Plaintiffs'

19  counsel for the purpose of acquiring the Site from the Plaintiffs.  (Fact No. 22.)

20      In October 2013, the Gutierrez LLC and Daniel Rubin executed an agreement

21  for the purchase of the Site (the "Purchase and Sale Agreement").  (Fact No. 23.)

22  The agreement was signed by John R. Till, as the managing partner of Gutierrez

23  LLC,  and by Daniel Rubin, as the trustee of the Goldberg Family Revocable Trust.

24  (Fact Nos. 24.)  A later addendum to the Purchase and Sale Agreement states that

25  after "an investigation of the status of title to the property," the seller was changed

26  from the Goldberg Family Revocable Trust to the Estate of Betty Goldberg.  (Fact

27  No. 25.)  That addendum was signed by Daniel Rubin, "as administrator of the

28  Decedent, Betty Goldberg, Estate."  (Fact No. 26.)

The Gutierrez LLC submitted a Prospective Purchaser Application regarding the Site to the DTSC in June 2014.  (Fact No. 27.)  That application advised the DTSC that the Gutierrez LLC planned to purchase the Site and expected to take title in "December 2014."  (Fact No. 28.)  The Gutierrez LLC represented to the DTSC that it planned to address the contamination at the Site, that it planned to develop the Site "for some combination of retail, warehouse, and office" space, and that it had "secured capital investment commitments sufficient to complete the scope of the work contemplated" at the Site.  (Fact Nos. 29-30.)

In December 2014, the Gutierrez LLC and the DTSC signed an Agreement and Covenant Not to Sue concerning the Site (the "DTSC Agreement").  (Fact No. 31.)  The DTSC Agreement states that the Gutierrez LLC has committed to investigate and clean up contamination at and from the Site, and committed to a scope of work to be approved by the DTSC.  (Fact No. 32.)  The DTSC Agreement recites that "the current property owner does not have the financial resources to perform the investigation or cleanup" of contamination at the site.  (Fact No. 33.)

The Gutierrez LLC contends that it has started to address contamination at the Site.  In early 2015, the Gutierrez LLC conducted and paid for an environmental assessment concerning the Site.  (Fact No. 34.)

Thus, in summary, in 2014, an entity owned by Plaintiffs' counsel signed an agreement to purchase and clean up the Site, advised the DTSC that it intended to acquire the Site, signed an agreement with the DTSC to clean up the contamination there, and began work to address it.

### F.   Daniel Rubin Opened a Probate Estate for Betty Goldberg in September 2014, in Order to Sell the Site.

On September 1, 2014, Daniel Rubin petitioned the Orange County Superior Court to open a probate estate for Betty Goldberg.  (Fact No. 35.)  In a Supplement to the petition, filed on September 11, 2014, Mr. Rubin represented that the purpose of opening the probate estate was, in part, to sell real property owned by the estate.

2286971.1

1    (Fact Nos. 36-37.)  In that filing, Mr. Rubin represented to the Superior Court that:

2    "There is a 'buyer' for the property that is willing to perform the environmental

3    cleanup, if the property is transferred to the 'buyer' outright.  A probate has been

4    filed … to avoid having any of the heirs in the chain of title for the contaminated

5    property."  (Fact No. 37.)  Mr. Rubin also represented that the estate has zero

6    personal property and zero income, and that the net value of real property owned by

7    the estate is zero.  (Fact No. 38.)

8         On October 16, 2014, the Orange County Superior Court entered a minute

9    order stating that Daniel Rubin was appointed as Administrator of the Estate of Betty

10   Goldberg, and that the "Petition for Letters of Administration filed by Daniel Rubin

11   is approved as supplemented with Full IAEA powers for the purpose of completing

12   the transfer of property only."  (Fact No. 39.)

13        Later, on May 27, 2015, Mr. Rubin filed a Notice of Proposed Action in the

14   probate matter in the Orange County Superior Court.  (Fact No. 40.)  In that filing,

15   Mr. Rubin provided notice that on or after June 15, 2015, the personal representative

16   of the estate will sell the "real property commonly known as 220 West Gutierrez

17   Street, Santa Barbara, CA . . . at private sale to 220 West Gutierrez, LLC."  (Fact No.

18   41.)  In the notice, Mr. Rubin represented to the Court that:  "Buyer does all

19   environmental remediation on the property prior to the sale closing."  (Fact No. 42.)

20        In other words, as the Gutierrez LLC previously advised the DTSC, the Betty

21   Goldberg Estate represented to the Orange County Superior Court that the Gutierrez

22   LLC had agreed to buy the Site and pay for the environmental cleanup there.

23   **G.    In 2014, the Goldberg Estates Sought to Resurrect
24        the 1994 Action, and Then Filed This Case.**

25        During the negotiations for the sale of the Site, or shortly after the Gutierrez

26   LLC agreed to acquire it, a principal of the Gutierrez LLC arranged to represent the

27   Goldberg Estates in the 1994 Action.  (Fact No. 43.)  In March 2014, plaintiffs

28

MEMORANDUM OF POINTS AND AUTHORITIES  14 CV 01872

2286971.1

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

1  "Betty Goldberg and Al Goldberg" filed a Request for Status Conference in the 1994

2  Action.  (Fact No. 44.)

3       The Request for Status Conference represented that the DTSC had sent

4  plaintiffs a January 30, 2014, letter, which "demanded that Plaintiffs immediately

5  take action" to address contamination at the Site."  (Fact No. 45.)  In fact, the

6  DTSC's letter was addressed to the "Al and Betty Goldberg Trust, c/o Mr. Dan

7  Rubin," not to the estates of Al Goldberg or Betty Goldberg.  (Fact No. 46.)  The

8  Request for Status Conference further represented that:  "Plaintiffs are now

9  deceased, but the liability of their estates for the contamination at and around the

10  property located at 220 W. Gutierrez Street, Santa Barbara, California (the

11  'Property') continues to plague their personal representative."  (Fact No. 47.)

12       But the Estate of Betty Goldberg and the Gutierrez LLC had already signed

13  the Purchase and Sale Agreement – in which the Gutierrez LLC agreed to acquire the

14  Site and clean up contamination there – before the Goldberg Estates sought to

15  reactivate the 1994 Action.  (*See* Fact Nos. 23 and 43.)

16       On June 12, 2014, this Court entered an Order requiring the plaintiffs to show

17  cause why the 1994 Action "should not be dismissed for lack of prosecution given

18  their abandonment of the action for more than 17 years."  (Fact No. 48.)  On June 27,

19  2014, with their response to that Order, the plaintiffs filed a declaration of Daniel

20  Rubin,  and represented that the Goldberg Estates do not have resources to conduct

21  the investigation and remediation at the Site without pursuing recovery from the

22  defendants.  (Fact No. 49.)

23       In August 2014, the Court dismissed the 1994 Action for lack of prosecution.

24  (Fact No. 50.)  The Goldberg Estates then filed the Complaint in this Action in

25  September 2014.  (Fact No. 1.)

26       After the Complaint in this Action was filed, the Gutierrez LLC revised the

27  Purchase and Sale Agreement for the Site.  The Gutierrez LLC had represented to the

28  DTSC that it expected to acquire title to the Site in "December 2014."  (*See* Fact No.

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

28.)  The Gutierrez LLC later added an addendum to the Purchase and Sale Agreement delaying the closing date and transfer of title until 40 days after this litigation has concluded.  (Fact No. 51.)  Mr. Rubin signed the addendum without reading it when his lawyer—who was and remains a member of the Gutierrez LLC—gave it to him to sign.  (Fact Nos. 20-21, 52.)

Although the conditions set out in the Purchase and Sale Agreement for transferring the Site to the Gutierrez LLC have been met, Mr. Rubin testified that the Gutierrez LLC and the Estate of Betty Goldberg are waiting for this litigation to conclude before transferring title to the Site to the Gutierrez LLC, and that they plan to close the real estate transaction and transfer title to the Site only when this action has ended.[1]  (Fact Nos. 53-54.)

**H.**   **The Plaintiffs' Discovery Responses Establish that the Plaintiff Estates Have Not  Incurred Response Costs at the Site.**

Discovery has shown that the Goldberg Estates have not incurred costs relating to contamination at the Site.  There is no estate of Al Goldberg (Fact No. 55) and the Estate of Betty Goldberg cannot show it has incurred response costs at the Site.  (Fact Nos. 57-71.)

Intervenors served written discovery requests asking the Plaintiffs to identify all response costs the estates claim to have paid and to provide any evidence of such payments.  (Fact No. 56.)  The Plaintiffs served interrogatory responses asserting that they have paid costs relating to contamination at the Site, but provided no evidence

---

[1]  It appears that the Plaintiffs' counsel are pursuing this case in the estates' names – and pretending the estates are liable for contamination at the Site – as part of an effort to manufacture claims for insurance recovery.  The Plaintiffs' counsel agreed to acquire and clean up the property, and now are pursuing this litigation in an effort to pass their remediation costs to other parties' insurers.  However, the plaintiff estates have not incurred liability for cleanup costs at the Site, and thus have no basis or standing to assert claims against the defendants.

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

**MEMORANDUM OF POINTS AND AUTHORITIES  14 CV 01872**

1    supporting that assertion.  (Fact Nos. 57-58, 62-65.)  Deposition testimony confirms

2    that the Plaintiffs lack any such evidence.  (Fact Nos. 59-60, 66-71.)

3          Specifically, the Plaintiffs' written discovery responses asserted that the

4    Goldbergs had paid $230,000 to address contamination at the Site by 1995.  (Fact

5    No. 57.)  But the Plaintiffs' discovery responses identify no evidence supporting that

6    assertion.  (Fact No. 58.)  Moreover, in his deposition, the Plaintiffs' representative,

7    Daniel Rubin, could not identify any evidence to support that assertion.  (Fact Nos.

8    59-60.)

9          The Plaintiffs' written discovery responses also asserted that they have paid

10   $150,000 to address contamination at the Site since 2012.  (Fact No. 61.)  In the meet

11   and confer before this motion was filed, the Plaintiffs' counsel asserted that copies of

12   certain documents show that the Plaintiffs have paid such costs.  (Fact No. 62.)   The

13   documents cited suggest that site investigation and other costs have been paid by

14   *someone*, but they provide no evidence that the Plaintiff estates paid them.  (Fact

15   Nos. 63-68.)  On the contrary, Plaintiffs' representative, Daniel Rubin, testified that

16   there is no estate of Al Goldberg and confirmed that the Estate of Betty Goldberg has

17   not paid any costs to address contamination at the Site.  (Fact Nos. 55, 66, 68-71.)

18   The Plaintiffs did cite two checks for payments totaling $2,500 in 2013, but the

19   checks show that those payments were made by the Goldberg Family Revocable

20   Trust, which is distinct from the Goldberg Estates and is not a party in this case.

21   (Fact No. 67.)

22   **IV.    ARGUMENT**

23         **A.    Standard for Summary Judgment.**

24         Rule 56(a) of the Federal Rules of Civil Procedure provides that the Court

25   "shall grant summary judgment if the movant shows that there is no genuine dispute

26   as to any material fact and the movant is entitled to judgment as a matter of law."

27   (*See Humboldt Bank v. Gulf Ins. Co.*, 323 F.Supp.2d 1027, 1031 (N.D. Cal. 2004).)

28   ///

9

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

1    A party seeking summary judgment bears the initial burden of demonstrating

2 the absence of a genuine issue of material fact. (*Celotex Corp. v. Catrett*, 477 U.S.

3 317, 323 (1986).)  Where the plaintiff has the burden of proving its claim for

4 recovery, as here, a defendant meets its burden on summary judgment by "showing

5 – that is, pointing out to the District Court – that there is an absence of evidence to

6 support the nonmoving party's case." (*Id*. at 325.)  For example, a defendant can

7 meet its burden on summary judgment by showing that the plaintiff – in answering

8 discovery requests specifically requesting such information – failed to identify

9 evidence supporting a necessary element of the plaintiff's case. (*Celotex Corp. v.*

10 *Catrett*, *supra*, 477 U.S. at 320; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*

11 *Inc.* 210 F.3d 1099, 1105 (9th Cir. 2000).)

12    Once the moving party meets its burden, the burden shifts to the party

13 opposing the motion, who "must set forth specific facts showing that there is a

14 genuine issue for trial." (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).)

15 The nonmoving party must do more than make conclusory allegations. (*Lujan v.*

16 *National Wildlife Federation*, 497 U.S. 871, 888 (1990).)  Neither the "mere

17 existence of some alleged factual dispute between the parties," nor "some

18 metaphysical doubt as to the material facts," is sufficient to defeat a motion for

19 summary judgment. (*Anderson, supra,* 477 U.S. at 247; *Matsushita Elec. Indus. Co.*

20 *v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).)

21    Admissions by a party in its pleadings are binding on that party. (*Missouri*

22 *Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990).)  A plaintiff's

23 factual assertions in its complaint and other documents filed in court "are considered

24 judicial admissions conclusively binding on the party who made them." (*American*

25 *Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988).)  The Plaintiffs'

26 statements in this Court, the 1994 Action, and the probate court are binding.

27 ///

28 ///

10

2286971.1

**B.**   **The Goldberg Estates Have Not Incurred Liability or Paid Costs for the Contamination at Issue.**

**1.**   **The Goldberg Estates Do Not Face Liability To the Water Board or DTSC Because Another Entity Has Agreed To Investigate and Clean Up the Site.**

The Plaintiffs have provided no evidence that the Goldberg Estates incurred liability for contamination at the Site.  (Fact Nos. 57-71.)  On the contrary, the Gutierrez LLC has agreed to purchase the Site and clean up the contamination, and the DTSC approved that arrangement.  (Fact Nos. 23, 27-32.)

As noted above, the Goldberg Estates have admitted they have an agreement with the Gutierrez LLC to buy and clean up the Site.  Mr. Rubin represented this in his Orange County Superior Court probate filings. (Fact Nos. 37, 41-43.)

Again, the DTSC and the Gutierrez LLC agreed in the written Agreement and Covenant Not to Sue regarding the Site that the current Site owner lacked the financial resources to perform the investigation or cleanup." (Fact No. 34.)  The Gutierrez LLC agreed to do that work under the DTSC's supervision, and reported in its Prospective Purchaser Application that it had the resources to do it.  (Fact Nos. 29, 31-32.)

And, as noted above, Mr. Rubin's Notice of Proposed Action in the Betty Goldberg Estate probate proceeding stated:  "Buyer [i.e. the Gutierrez LLC] does all environmental remediation on the property prior to the sale closing."  (Fact No. 42.)

Under its agreements with the Estate of Betty Goldberg and the DTSC, the Gutierrez LLC represented that it has begun work required to address contamination at the Site.  In 2015, the  Gutierrez LLC claims it arranged and paid for a phase one environmental assessment conducted for the Site.  (Fact No. 34.)

Thus, although the Goldberg Estates allege in their Complaint that they face liability to the State of California for cleanup of contamination at the Site, the State approved agreements under which the Gutierrez LLC agreed to clean up the Site.

11

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

1    (*See* Fact Nos. 22-24, 27-34.)  As the Betty Goldberg estate's representative, Daniel

2    Rubin, testified in deposition, under the estate's agreement with the Gutierrez LLC,

3    the estate is not responsible for addressing contamination at the Site, and the

4    Gutierrez LLC is taking responsibility "for handling all the environmental issues" at

5    the Site.  (Fact No. 70; *see also* Fact Nos. 54-69.)   The Goldberg Estates do not face

6    claims for the contamination at the Site.

2.    **The Goldberg Estates Do Not Face Liability To the Water
      Board or DTSC, Because California Code of Civil
      Procedure § 366.2 Bars Suits for Recovery From the Estates.**

10       There is a second – separate and independent – reason the Goldberg Estates

11   do not face liability for contamination at the Site.  Due to the one-year statute of

12   limitations set out in California Code of Civil Procedure section 366.2, the Goldberg

13   Estates do not face liability to the Water Board or DTSC on which they could base a

14   claim against the defendants.

15       Al Goldberg died in 1994 and Betty Goldberg died in 2003, 22 and 13 years

16   ago, respectively.  (Fact Nos. 13, 15.)  Under Section 366.2, it is too late for the

17   Water Board or the DTSC to sue the Goldberg Estates for contamination damage that

18   took place before they died.

19       Suits against an estate are governed by California probate law.  "The 'estate'

20   of a decedent is not an entity known to the law.  It is neither a natural nor an artificial

21   person.  It is merely a name to indicate the sum total of the assets and liabilities of a

22   decedent." (*Tanner v. Best's Estate*, 40 Cal. App. 2d 442, 445 (1940); *see also*

23   *Pelayo v. City of Downey*, 570 F. Supp. 2d 1183, 1192 (C.D. Cal. 2008) (relying

24   upon and quoting *Tanner*).)  "An 'estate' can neither sue nor be sued,'" except as

25   provided by statute.  (*Pelayo*, *supra,* 570 F. Supp. 2d at 1192, quoting *Estate of*

26   *Bright v. Western Air Lines*, 104 Cal. App. 2d 827, 829 (1951).)

27       Subject to limited exceptions, a suit against an estate must be brought within

28   one year after the decedent's death:

**WOLFE & WYMAN LLP**
ATTORNEYS & COUNSELORS AT LAW

W&W

1    If a person against whom an action may be brought on a

2    liability of the person, <u>whether arising in contract, tort, or</u>

3    <u>otherwise, and whether accrued or not accrued</u>, dies before

4    the expiration of the applicable limitations period, and the

5    cause of action survives, <u>an action may be commenced</u>

6    <u>within one year after the date of death</u>, and the limitations

7    period that would have been applicable does not apply.

8    (*California Code of Civ. P*. § 366.2(a) (hereafter, "Section 366.2").)

9        As the District Court held in *Pontiac v. Flores*, 2011 WL 3846878, *6-*7

10   (E.D. Cal. Aug. 30, 2011), Section 366.2 bars suits against an estate under Section

11   107 of CERCLA and under state law, where suit is filed more than a year after the

12   decedent's death.  The operative complaint in *Pontiac v. Flores* alleged claims

13   against the Estate of Herbert Lee and others for groundwater contamination resulting

14   from dry cleaning solvents, including claims under Section 107 of CERCLA and

15   under California law.  (*Pontiac v. Flores*, *supra*, 2011 WL 3846878, at *1.)  The

16   court held that Section 366.2 barred all the claims against the Estate of Herbert Lee,

17   because the suit was filed 14 years after Mr. Lee's death.  (*Id.* at *6-*7.)  By contrast,

18   the suit was allowed to proceed against the estate of Sieto Yamaguchi, who died less

19   than a year before the complaint was filed.  (*Id.* at *3.)

20       Other courts agree that Section 366.2 bars suits against an estate under

21   CERCLA for liability of the decedent, where suit was commenced more than a year

22   after the decedent's death.  (*See Trans'-Global LLV v. Detomasi*, 2015 WL 9319322,

23   *4 (N.D. Cal. 2015), citing *Pontiac v. Flores, supra*; *see also Palmtree Acquisition*

24   *Corp. v. Neely*, 2010 WL 3910370, *3 (N.D. Cal. 2010).)[2]

25

26   _____

27   [2]  Although *Trans'-Global* and *Palmtree* hold that Section 366.2 applies to suits against estates under CERCLA, those courts found that this section did not bar the suits in those cases, for other reasons.  For example, the *Palmtree* court found that a

28   complaint against a trustee related back to an earlier suit against the estate that was timely under Section 366.2.  (*Palmtree, supra*, 2010 WL 3910370, *3.)

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

1    Although this Court recently ruled that Section 366.2 does not bar contribution

2  claims under Section 113 of CERCLA – asserted in response to a suit commenced by

3  the estate – Section 366.2 applies to preclude the commencement of *new* litigation

4  *against* an estate under Section 107 of CERCLA more than one year after the

5  decedent died.  (*Pontiac v. Flores*, *supra*, 2011 WL 3846878, at *6-*7.)  Both

6  *Trans'-Global* and *Palmtree* explain that Section 366.2 concerns an estate's capacity

7  *to be sued* for liability of the decedent.  (*Trans'-Global, supra,* 2015 WL 9319322,

8  *4; *Palmtree, supra,* 2010 WL 3910370, *3 fn. 1.)  Thus, California law governs

9  lawsuits filed against an estate (see Fed. R. Civ. P. 17(b)), and Section 366.2 would

10  bar a suit by the Water Board or DTSC against the Goldberg Estates.

11    The situation addressed in the Goldberg Estates' prior motion for judgment on

12  the pleadings is distinguishable from the issue presented here.  Section 366.2 does

13  not control an estate's capacity to *initiate a suit*.  Thus, on the prior motion the Court

14  ruled that Section 366.2 does not apply to CERCLA counterclaims in a suit initiated

15  by the estates.  (Jan. 6, 2016, Order Denying Motions for Judgment on the Pleadings,

16  ECF No. 223, pp. 1-2.)  By contrast, Section 366.2 would preclude the Water Board

17  or DTSC from suing the Goldberg Estates under CERCLA at this time.

18    Moreover, Section 366.2 bars claims for affirmative relief asserted against an

19  estate under California law, where the harm at issue commenced before the decedent

20  died.  (*See Pontiac v. Flores*, *supra*, 2011 WL 3846878, at *6-*7; *see also Ferraro v.*

21  *Camarlinghi*, 161 Cal. App. 4th 509, 552 (2008) (the statute bars claims that could

22  have been asserted against a decedent while he or she was alive); *Dacey v. Taraday*,

23  196 Cal. App. 4th 962, 986 (2011) ("The statute of limitations cuts off the time for

24  asserting a claim against the decedent's estate based on a cause of action that existed

25  against the decedent before the decedent's death.").)

26    For these reasons – even apart from the Gutierrez LLC's agreements to buy

27  the Site and clean up contamination there – Section 366.2 would bar a suit by the

28  Water Board or the DTSC against the Goldberg Estates at this time for

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW
W&W

1   contamination at the Site.  Contrary to their allegations in the Complaint, the

2   Goldberg Estates face no liability to the Water Board or DTSC upon which the

3   estates could base a claim against the defendants for cost recovery, contribution, or

4   indemnity.

### 3.   The Goldberg Estates Have Produced No Evidence That They Have Paid Response Costs at the Site.

7       The Goldberg Estates have not produced evidence that they incurred costs

8   relating to contamination at the Site.  (Fact Nos. 55-70.)  On the contrary, as noted

9   above, the Goldberg Estates' personal representative, Daniel Rubin, represented to

10  the Orange County Superior Court that the estates have "zero" personal property or

11  income, and do not have the resources to perform investigation and remediation at

12  the Site.  (Fact Nos. 38, 49.)

13      Moreover, as discussed above, discovery in this case confirms that the

14  Plaintiffs cannot show they paid any response costs with respect to the Site.

15  Although the Goldberg Estates served interrogatory responses asserting that the

16  estates have paid costs relating to contamination at the site, they provided no

17  evidence supporting that assertion.  (Fact Nos. 58, 61-65.)  The documents and

18  testimony the Plaintiffs provided do not establish the Goldberg Estates have paid or

19  are paying any contamination-related costs.  (Fact Nos. 63-70.)

20      And again, although the Plaintiffs provided information suggesting that certain

21  investigation and other costs have been paid by *someone*, there is no evidence that

22  the Plaintiff estates paid any such costs.  (Fact No. 63-70.)  Other documents show

23  invoices sent to the Plaintiffs' counsel (who own the Gutierrez LLC), but they do not

24  show who paid the invoices, and Mr. Rubin's deposition testimony confirms that the

25  Plaintiffs did not.  (Fact Nos. 66-70.)

26      Indeed, in his deposition, the Goldberg Estates' representative, Daniel Rubin,

27  could not identify evidence showing that the Plaintiffs have incurred any costs to

28  address contamination at the Site.  (Fact Nos. 66-70.)  On the contrary, Mr. Rubin

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW
W&W

15

MEMORANDUM OF POINTS AND AUTHORITIES  14 CV 01872

2286971.1

testified that the Estate of Betty Goldberg is not paying any current costs of addressing contamination at the Site, and that under the agreement with the Gutierrez LLC the estate is not responsible for future environmental costs.  (Fact Nos. 70-71.)  Again, there is no estate of Al Goldberg.  (Fact No. 55.)

In short, the evidence shows that the plaintiff estates have not incurred response costs concerning the Site and do not face liability for contamination.

**C.** **The Estates Cannot Recover Under CERCLA Section 107 Because they Have Not Incurred and Do Not Face Liability for the Underlying Contamination Claims**

The Plaintiffs' first cause of action seeks recovery of alleged response costs under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).  (Complaint, ECF No. 1, ¶¶ 43-51.)  However, because the Goldberg Estates do not face liability and have not incurred response costs regarding the Site, they have no basis or standing to seek cost recovery under Section 107.

**1.** **The Plaintiffs Have Not "Incurred" Any Costs at the Site Because They Are Not Liable for Such Costs.**

CERCLA § 107(a) allows private parties to recover costs they incurred to address contamination, provided that various statutory requirements are met. (42 U.S.C. § 9607(a)(4)(B); *United States v. Atlantic Research Corp.*, 551 U.S. 128, 136 (2007).)  Proof that the plaintiff incurred costs is an essential element of any CERCLA cost recovery claim.  (*See Atlantic Research*, *supra*, 551 U.S. at 134-135.)

The Goldberg Estates have not incurred response costs within the meaning of CERCLA.  A party cannot "incur" costs under CERCLA unless it is "statutorily liable for, or is subject to, the costs related to the cleanup."  (*Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, 710 F.3d 946, 961-62 (9th Cir. 2013).)  As discussed above, however, the Goldberg Estates do not face liability for any response costs or other obligations connected with the Site.  A different entity has agreed to acquire the property and remediate the Site, and – in any event – Code of Civil Procedure section 366.2 would preclude a suit by the DTSC against the Goldberg Estates at this

16

2286971.1

1  time. (*Pontiac v. Flores*, *supra*, 2011 WL 3846878, *6-*7.)  In the absence of

2  potential liability, the Plaintiffs have not "incurred" costs under CERCLA §107(a),

3  and cannot obtain cost recovery from the defendants under that section.

### 2.  The Plaintiffs Have Produced No Evidence That They Incurred Any Recoverable Costs in Connection with the Site.

6  To recover costs under CERCLA § 107(a), a party must have actually spent

7  the money itself. (*In re Dant & Russell, Inc.*, 951 F.2d 246, 249 (9th Cir. 1991).  As

8  the Supreme Court has held, "§ 107(a) permits a PRP to recover <u>only</u> the costs it has

9  'incurred' in cleaning up a site." (*Atlantic Research*, *supra*, 551 U.S. at 139

10  (emphasis added).)  Under Section 107, however, a party does not "incur" cleanup

11  costs that were actually paid by someone else.  For example, a party does not "incur"

12  costs that were paid by the party's lawyers or its insurers.  (*Trimble v. ASARCO, Inc.*,

13  83 F.Supp.2d 1034, 1038-1040 (D. Neb. 1999) (costs advanced by a law firm were

14  not "incurred" by the party for purposes of Section 107); *Basic Management, Inc. v.*

15  *United States*, 569 F.Supp.2d 1106, 1119-1120 (D. Nev. 2008) (costs paid by an

16  insurer were not "incurred" by the policyholder for purposes of Section 107).)

17  Here, the Goldberg Estates have produced no evidence that they paid any costs

18  alleged in the Complaint.  As discussed above, although the Plaintiffs have provided

19  invoices suggesting that certain costs have been paid by *someone*, they provided no

20  evidence that those alleged costs were paid by the *Plaintiffs*.  (Fact Nos. 58-70.)

21  On the contrary, as noted above, the Plaintiffs have represented to this Court

22  and the probate court that they agreed to sell the Site to the Gutierrez LLC because

23  the estates do not have assets to pay for the cleanup.  (Fact Nos. 33, 38, 49.)  The

24  Plaintiffs' representative, Daniel Rubin, identified no evidence that the Goldberg

25  Estates paid past response costs at the Site, and testified that the Betty Goldberg

26  estate is not paying present environmental costs and is not responsible for future

27  costs; there is no estate of Al Goldberg.  (Fact Nos. 55, 68-71.)

28  ///

**MEMORANDUM OF POINTS AND AUTHORITIES  14 CV 01872**

2286971.1

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

1    Discovery confirms that the Goldberg Estates have not paid any costs relating

2    to contamination at the Site.  Indeed, as noted previously, the estates' representative,

3    Daniel Rubin, testified that the two checks totaling $2,500 that he wrote to

4    "Campbell Geo" on behalf of the Goldberg Family Revocable Trust in 2013, were

5    the "only two" checks he ever wrote for contamination-related costs relating to the

6    Site.  (*See* Fact No. 67.)  Those payments, however, were made by the Goldberg

7    Family Revocable Trust, not by the Goldberg Estates.  (*Id*.) The Goldberg Family

8    Revocable Trust is not a party in this case.  The Goldberg Estates have not paid costs

9    relating to contamination at the Site.

10    By contrast, the Gutierrez LLC agreed to pay all of the costs to remediate

11    contamination at the Site, and represented to the DTSC that it "has secured capital

12    investment commitments sufficient to complete the scope of work contemplated."

13    (Fact Nos. 27, 29, 32, 70.)  Again, the Gutierrez LLC is comprised of partners at the

14    law firm representing the Plaintiffs in this case.  (Fact No. 21.)  A party does not

15    "incur" costs that were paid by its attorneys.  (*Trimble, supra,* 83 F. Supp. 2d at

16    1038.)

17    The Goldberg Estates cannot show they incurred costs for contamination at the

18    Site, so they cannot state a claim for cost recovery under CERCLA § 107.

19    **D.    Plaintiffs' CERCLA Claims for Recovery of Any Costs Allegedly**
        **Incurred in the 1990s Are Time-Barred.**

20

21    Although the Plaintiffs have provided no evidence, they allege they incurred

22    response costs in the 1990s.  Even if the Plaintiffs had evidence to support that claim,

23    their CERCLA claims for recovery of any costs paid in the 1990s are time-barred.

24    Apart from Section 366.2, any CERCLA claim against the defendants is

25    subject to the limitation set out in CERCLA § 113, which provides that the

26    limitations for recovering private party response costs is either (1) within three years

27    of completion of a removal action, or (2) within six years after construction of a

28    remedial action began.  (42 U.S.C. § 9613(g)(2)(A)-(B).)

18

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

W&W

2286971.1

1    By definition, "removal" and "remedial action" are the only actions

2    contemplated by CERCLA.  (42 U.S.C. § 9601(25).)  In general, a "removal" is a

3    "short-term cleanup," while a "remedial action" is characterized by "measures to

4    achieve a permanent remedy."  (*Exxon Corp. v. Hunt*, 475 U.S. 355, 360 (1986).)

5    Whether any investigation work in the 1990s is classified as "removal" or

6    "remedial," any such work took place more than six years before this action was

7    filed.  Regardless of how alleged response actions by the Plaintiffs' in the 1990s are

8    characterized, the three-year and six-year limitations periods have expired, and thus

9    any recovery of associated costs is barred.

10

### E.    The Goldberg Estates Cannot Recover Under CERCLA § 113, Because the Statutory Requirements are Absent.

12

13    The Plaintiffs' ninth cause of action seeks contribution pursuant to CERCLA

14   § 113(f), 42 U.S.C. § 9613(f).  (Complaint, ECF No. 1, ¶¶ 125-27.)  Under this

15   section, a person may seek contribution from another person "who is liable or

16   potentially liable under section 9607(a) of this title, *during or following* any civil

17   action under section 9606 of this title or under section 9607(a) of this title."  (42

18   U.S.C. § 9613(f)(1) (emphasis added).)

19    As required by that statutory wording, a party that "has never been subject" to

20   "a civil action under § 106 or § 107(a) … has no § 113(f)(1) claim."  (*Cooper Indus.,*

21   *Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 168 (2004).  In other words, a party that

22   has never been sued under § 106 (federal abatement action) or § 107(a) (cost

23   recovery action) is not entitled to seek contribution under Section 113.  (*Kotrous v.*

24   *Goss-Jewett Co. of Northern California,* 523 F.3d 924, 934 (9th Cir. 2008).)

25    The Goldbergs and their estates were never subject to an action under §§ 106

26   or 107(a).  (Fact No. 71.)  Accordingly, the Plaintiffs cannot maintain any claim

27   under CERCLA § 113(f), and their Ninth Cause of Action should be dismissed.

28   ///

**F.    The Goldberg Estates Cannot Recover Under the California Hazardous Substance Account Act.**

**1.    The Plaintiffs Have Not "Incurred" Costs Under the HSAA.**

The Goldberg Estates' eighth cause of action seeks contribution and indemnity under the California Hazardous Substance Account Act, California Health & Safety Code § 25300 *et seq.* (the "HSAA").  (Complaint, ECF No. 1, ¶¶ 115-24.)  Modeled in large part on CERCLA, the HSAA allows "[a] person who has incurred response or corrective action costs … [to] seek contribution or indemnity from any person who is liable."  (*Cal. Health & Safety Code* § 25363(d).)

As detailed above, the Plaintiffs have not incurred any costs recoverable under CERCLA, and do not face liability for contamination at the Site.  (Fact Nos. 55-71.)  Although the HSAA allows a plaintiff to seek contribution or indemnity for costs it incurred, this statute does not define "incurred."  In the absence of specific provisions to the contrary, the HSAA is interpreted consistently with CERCLA.  (*See, e.g., Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1084 n. 40 (C.D. Cal. 2003); *see also Adobe Lumber, Inc. v. Hellman*, 658 F. Supp. 2d 1188, 1192-93 (E.D. Cal. 2009) ("California's HSAA provides for civil actions for indemnity and contribution and expressly incorporates CERCLA's liability standards and defenses.").)  As the Plaintiffs have not incurred recoverable costs under CERCLA, they have not incurred recoverable costs under the HSAA.

Moreover, recovery under the HSAA is limited to "contribution or indemnity." (*Cal. Health & Safety Code* § 25363(d).)  Contribution is the allocation of fault among tortfeasors who face common liability (*American Motorcycle Ass'n v. Superior Court*, 20 Cal. 3d 578, 591 (1978), and "there can be no indemnity without liability." (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hosp.*, 8 Cal. 4th 100, 114-116 (1994).)  The Goldberg Estates do not face liability for contamination at the Site, as detailed above, so they are not entitled to recovery under the HSAA. ///

20

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

2.     **The HSAA Does Not Authorize Suits By an Estate**.

Additionally, the Plaintiff estates are not "persons" entitled to pursue claims under the HSAA.  The HSAA provides for claims by a "person," defined as:

> an individual, trust, firm, joint stock company, business
> concern, corporation, including, but not limited to, a
> government corporation, partnership, limited liability
> company, and association. "Person" also includes any city,
> county, city and county, district, commission, the state or
> any department, agency, or political subdivision thereof,
> any interstate body, and the United States and its agencies
> and instrumentalities, to the extent permitted by law.

(*Cal. Health & Safety Code* § 25319.)  The definition does not include an "estate." The HSAA provides that its definitions "shall govern the interpretation of this chapter."  (*Cal. Health & Safety Code* § 25310.)

By contrast, in other contexts the California Legislature has expressly defined "person" to include estates.  (*Compare  Probate Code* § 56 ("'Person' means an individual, corporation, government or governmental subdivision or agency, business trust, *estate*, trust, partnership, limited liability company, association, or other entity") (emphasis added).)

For this reason as well, the Goldberg Estates have no basis to assert claims against the defendants under the HSAA.  "An 'estate' can neither sue nor be sued,'" except as provided by statute.  (*Pelayo*, *supra*, 570 F. Supp. 2d at 1192 (quoting *Estate of Bright v. Western Air Lines*, *supra,* 104 Cal. App. 2d at 829.)  The HSAA statute does not provide for any suit by an estate.  (*Health & Safety Code* § 25319.)

///

///

///

///

**MEMORANDUM OF POINTS AND AUTHORITIES  14 CV 01872**

2286971.1

**G.**   **The Goldberg Estates Cannot Recover Under Their State Law Claims for Equitable or Contractual Indemnity.**

**1.**   **The Goldberg Estates Do Not Face Liability That Could Give Rise To a Claim for Indemnity.**

The Goldberg Estates' Complaint also pleads state-law claims for equitable indemnity and contractual indemnity.  (Complaint, ECF No. 1, ¶¶ 74-78; and ¶¶ 152-157.)  In each of those claims, the Complaint pleads that the Goldberg Estates are entitled to indemnity for alleged liability for contamination costs at the Site. (Complaint, ECF No. 1, ¶¶ 76-78 and 156-157.)

The Goldberg Estates have no basis or standing to pursue indemnity claims under either theory.  "The right to equitable indemnity arises from the principle that an individual who has paid damages which ought to have been paid by another wrongdoer may recover from that wrongdoer."  (*Sullins v. Exxon/Mobil Corp*., 729 F. Supp. 2d 1129, 1139 (N.D. Cal. 2010), citing *Bush v. Superior Court*, 10 Cal. App. 4th 1374, 1380 (1992).)  In other words, a required element of a claim for equitable indemnity is that the claimant paid a judgment or settlement and seeks to recover amounts it paid against another party.  (*Sullins, supra,* 729 F. Supp. 2d at 1139-1140, citing *Western Steamship Lines, Inc. v. San Pedro Peninsula Hosp*., 8 Cal. 4th 100, 110 (1994).)  "[T]here can be no indemnity without liability." (*Western Steamship Lines, supra,* 8 Cal.4th at 114.)

Similarly, a claim for contractual indemnity requires that the plaintiff has incurred a liability for which it seeks recovery under the contract.  (*Bay Development, Ltd. v. Superior Court*, 50 Cal. 3d 1012, 1033, n.13 (1990) ("indemnity claim presupposes that the party seeking indemnity has been properly found, on some theory, to be liable for a third party's injuries").)

The Goldberg Estates do not face liability for contamination at the Site, so they cannot obtain equitable or contractual indemnity from the defendants. ///

**MEMORANDUM OF POINTS AND AUTHORITIES  14 CV 01872**

2286971.1

1

2.      **The Contractual Indemnity Claim Is Time-Barred.**

2       The Plaintiffs' fourth cause of action seeks contractual indemnification, under

3   alleged "indemnity agreements that require [Defendants] to hold harmless and

4   indemnify and defend Plaintiffs." (Complaint, ECF No. 1, ¶¶ 74-78.)  Goss-Jewett's

5   last lease with the Goldbergs expired, and it vacated the Site, by May 4, 1991.  (Fact

6   No. 73-74.)  The Goldbergs were aware of their alleged injuries no later than

7   September 29, 1993, when the Water Board issued an order regarding the Site to Al

8   and Betty Goldberg, among others, that is noted in the Complaint.  (Fact No. 75.)

9   The statute of limitations for a breach of contract action in California is four years.

10  (Code of Civ. Proc § 337.)  Thus, the Plaintiffs' contractual indemnity claims

11  expired no later than September 29, 1997.

12      3.      **The Indemnity Claims Are Barred by the Doctrine of Laches.**

13      In its December 16, 2014, Order, the Court found, based on the pleadings, that

14  several of Plaintiffs' claims were barred by the doctrine of laches.  (ECF No. 49, at

15  2-3.)  Laches bars a claim where plaintiffs' delay in filing suit was unreasonable, and

16  where the defendants would suffer prejudice if the suit were allowed to continue.

17  (*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).)

18  Although the Goldberg Family Revocable Living Trust had an attorney-in-fact

19  managing the Site from 1994 to 2003, and Mr. Rubin has managed the Site

20  continuously since 2003, the Plaintiffs delayed pursuing this suit for more than 17

21  years. (Fact No. 76-77.)  The Court has already found the Plaintiffs' delay to be

22  unreasonable and in fact "negligent conduct."  (ECF No. 49, at 2; ECF No. 223, at 2

23  n.2.)  The Court should rule that the Plaintiffs' indemnity claims are barred by the

24  doctrine of laches.

25      H.      **The Goldberg Estates Are Not Entitled to Declaratory Relief.**

26      Finally, the Complaint pleads a claim for declaratory relief.   (Complaint, ECF

27  No. 1, ¶¶ 164-169.)  The Plaintiffs' fourteenth claim, entitled "Declaratory Relief,"

28  does not cite CERCLA as its basis, and is thus asserted under state law only. (*See*

1  Complaint, ECF No. 1, ¶¶ 164-69.)  As the Plaintiffs do not face liability for

2  contamination at the Site, there is no justiciable controversy as to alleged future costs

3  at the Site and no basis for declaratory relief under California law.

4  Even if the Complaint had alleged a claim for declaratory relief under

5  CERCLA – which it does not – declaratory relief as to alleged future liability is not

6  available because the Goldberg Estates do not face such liability.

7  Moreover, declaratory relief is available under CERCLA "only if liability for

8  past costs has been established under section 107."  (*City of Colton v. American*

9  *Promotional Events, Inc.-West*, 614 F.3d 998, 1008 (9th Cir. 2010).)  This rule

10  reflects the language of the statute, which allows declaratory relief only "to recover

11  *further* response costs."  (*Id.*; 42 U.S.C. § 9613(g)(2) (emphasis added).)  But, the

12  Goldberg Estates do not face liability for contamination at the Site, and have not

13  provided evidence that they paid response costs, so the Goldberg Estates are not

14  entitled to declaratory relief in this action.

15  The Plaintiffs' claim for declaratory relief is also subject to dismissal because

16  it is derivative of the Plaintiffs' other claims and does not state any independent basis

17  for relief.  (*See* Complaint, ECF No. 1., ¶¶ 152-57 and 164-69.)

18  **I.**   **Robert Schack or Benjamin Fohrman Are Not Liable to Plaintiffs,**
**Who Admitted They Have No Evidence That Robert Schack or**

19  **Benjamin Fohrman Caused Contamination at the Site.**

20

21  The Plaintiffs' claims against the Estate of Benjamin Fohrman and the Estate

22  of Robert Schack should be dismissed on summary judgment for additional reasons

23  as well.  First, neither Mr. Fohrman or Mr. Schack was an "owner or operator" of the

24  Site.  Plaintiffs contend that Al and Betty Goldberg were the owners of the Site while

25  they were alive, and there is no evidence of any other owner of the Site, other than

26  the Goldberg Family Revocable Trust.  (Fact No. 78.)   In follow up to meeting and

27  conferring on their discovery responses, Plaintiffs did not include Messrs. Fohrman

28  and Schack on the list of tenants at the Site.  (Fact No. 79.)

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW
W&W

**MEMORANDUM OF POINTS AND AUTHORITIES  14 CV 01872**

Second, the plaintiff estates' representative admitted in deposition that he is not aware of any evidence that Benjamin Fohrman or Robert Schack caused or contributed to contamination at the Site or are responsible for any acts alleged in the Complaint in this case.  (Fact Nos. 78-79.)

**J.    Any Claims by the "Estate of Al Goldberg" Should be Dismissed, Because There is No Such Estate.**

The claims asserted by Plaintiff "Estate of Al Goldberg" should also be dismissed on summary judgment because the Goldberg Estates' representative admitted in deposition that there is no estate of Al Goldberg.  (Fact No. 55.)

**V.    CONCLUSION**

For the reasons set out above, Intervenors and Defendants respectfully request that the Court enter summary judgment against the Plaintiffs.

DATED:  March 4, 2016                    WOLFE & WYMAN LLP


By:  ___/s/ Matthew C. Bures_____
     MATTHEW C. BURES
     CHRISTOPHER T. JOHNSON
**Attorneys for Intervenors
VIGILANT INSURANCE COMPANY;
THE STANDARD FIRE INSURANCE
COMPANY; GREAT AMERICAN
INSURANCE COMPANY OF NEW
YORK, f/k/a/ AMERICAN NATIONAL
FIRE INSURANCE COMPANY;
CENTURY INDEMNITY COMPANY, as
Successor to CCI INSURANCE
COMPANY, as Successor to INSURANCE
COMPANY OF NORTH AMERICA**

**Attorneys for Defendants
THE ESTATE OF BENJAMIN F.
FOHRMAN, DECEASED, and THE
ESTATE OF ROBERT SCHACK,
DECEASED**

2286971.1

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

1    **PROOF OF SERVICE**

2    **STATE OF CALIFORNIA**      )
                                   )    **ss.**
3    **COUNTY OF ORANGE**         )

4    I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action.
     My business address is 2301 Dupont Drive, Suite 300, Irvine, California 92612-7531.   My e-mail address is
5    rsnichols@wolfewyman.com.

6    On March 4, 2016, I served the document(s) described as **INTERVENORS AND DEFENDANTS'**
     **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE**
7    **ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** on all interested parties in said action by
     placing a  true copy thereof in a sealed envelope addressed as stated on the ATTACHED SERVICE LIST.

8

9    ☐    **BY MAIL**: as follows:

10        ☐      **FEDERAL** – I deposited such envelope in the U.S. Mail at Irvine, California, with postage thereon
                 fully prepaid.

11   ☒    **BY ELECTRONIC TRANSMISSION** as follows:  By filing and serving directly through United States
          District Court, Central District of California CM/ECF website at **https://ecf.cacd.uscourts.gov**.
12

13   ☐    **BY E-MAIL** as follows: I caused the above-named document(s) to be transmitted via e-Mail to each addresses'
          email as listed on the attached service list.

14   ☐    **BY OVERNIGHT COURIER SERVICE** as follows: I caused such envelope to be delivered by overnight
          courier service to the offices of the addressee.  The envelope was deposited in or with a facility regularly
15        maintained by the overnight courier service with delivery fees paid or provided for.

16   ☐    **BY FACSIMILE** as follows: I caused such documents to be transmitted to the telephone number of the
          addressee listed on the attached service list, by use of facsimile machine telephone number.  The facsimile
17        machine used complied with California Rules of Court, Rule 2004 and no error was reported by the machine.
          Pursuant to California Rules of Court, Rule 2006(d), a transmission record of the transmission was printed.
18

19   ☒    **FEDERAL**      I declare that I am employed in the offices of a member of the State Bar of this Court at whose
          direction the service was made.

20        Executed on March 4, 2016, at Irvine, California.

21

22                                                              Rebecca Nichols

23

24

25

26

27

28

2112585.1

**SERVICE LIST**
**USDC – Central District, Case No.: 5:14-cv-01872-DSF (SHx_**
**Goldberg v. Goss-Jewett, et al.**
**W&W File No. 1414-058**
**[Revised: 2/4/16]**

| | |
|---|---|
| Bret Stone, Esq.<br>PALADIN LAW GROUP LLP<br>3 West Carrillo Street, Suite 212<br>Santa Barbara, CA 93101 | Plaintiffs<br>ESTATE OF BETTY GOLDBERG, DECEASED<br>ESTATE OF AL GOLDBERG, DECEASED<br><br>T: (805) 898-970<br>F: (805) 852-2495<br><br>bstone@paladinlaw.com,<br>rcasstevens@paladinlaw.com,<br>bpaget@paladinlaw.com |
| Ferdie Franklin, Esq.<br>Cristina Matsushima, Esq.<br>Karen Patrician Agelson, Esq.<br>WFBM LLP<br>One City Boulevard West, 5th Floor<br>Orange CA 92868 | Plaintiffs ESTATE OF BETTY GOLDBERG, DECEASED<br>ESTATE OF AL GOLDBERG, DECEASED<br><br>T: (714) 634-2522<br>F: (714) 634-0686<br><br>cmatsushima@wfbm.com<br>kagelson@wfbm.com<br>ffranklin@wfbm.com |
| Joseph Adams, Esq.<br>Farheena Habib, Esq.<br>BASSI EDLIN HUIE & BLUM LLP<br>500 Washington Street, Suite 700<br>San Francisco CA 94111 | Defendants DONALD GEORGE<br>ESTATE OF TERRENCE GEORGE, DECEASED<br><br>jadams@behblaw.com<br>fhabib@behblaw.com |
| Sarah Evans, Esq.<br>SCHWARTZ SEMERDJIAN<br>CAULEY & MOOT LLP<br>101 West Broadway, Suite 810<br>San Diego CA 92101 | Defendant  ARTHUR ARNS<br><br>T: (619) 236-8821<br>F: (619) 236-8827<br><br>sarah@sscmlegal.com,<br>allison@sscmlegal.com |

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

2112585.1

| | | |
|---|---|---|
| 1 | John Van Vlear, Esq. | Defendant DAROLD MERRITT |
| 2 | NEWMEYER & DILLION LLP | |
| | 895 Dove Street, Fifth Floor | T: (949) 854-7000 |
| 3 | Newport Beach CA 92660 | F: (949) 854-7099 |
| 4 | | John.Vanvlear@ndlf.com, |
| | | jack.rubin@ndlf.com, |
| 5 | | dan.miller@ndlf.com |
| 6 | | |
| | Brian Ledger, Esq. | Defendant JAMES ROSS |
| 7 | Candice S. Nam, Esq. | |
| | GORDON & REES LLP | T: (619) 696-6700 |
| 8 | 101 West Broadway, Suite 2000 | F: (213) 680-4470 |
| | San Diego CA 92101 | |
| 9 | | bledger@gordonrees.com, |
| | | mgonzalez@gordonrees.com |
| 10 | | cnam@gordonrees.com, |
| | | mzerby@gordonrees.com |
| 11 | | |
| | Gary Smith, Esq. | Third Party Defendant |
| 12 | Ryan Tacorda, Esq. | PPG INDUSTRIES, INC. |
| | Kaitlyn Day Shannon, Esq. | |
| 13 | BEVERIDGE & DIAMOND PC | gsmith@bdlaw.com, |
| | 456 Montgomery Street, Suite 1800 | acruz@bdlaw.com |
| 14 | San Francisco CA 94104 | rtacorda@bdlaw.com, |
| | | ronaka@bdlaw.com |
| 15 | | kshannon@bdlaw.com |
| 16 | | |
| | Felicia Starr, Esq. | Third Party Defendants |
| 17 | Wendy Leigh Wilcox, Esq. | PACIFIC ENGINEERING ASSOCIATES, INC. |
| | SKANE WILCOX LLP | CLAY SCOTT BRADFIELD |
| 18 | 1055 West 7th Street, Suite 1700 | |
| | Los Angeles CA 90017 | T: (213) 452-1200 |
| 19 | | F: (213) 452-1201 |
| 20 | | fstarr@skanewilcox.com, |
| 21 | | wwilcox@skanewilcox.com |
| 22 | Jeffrey Wilcox, Esq. | Third Party Defendant |
| 23 | LEGAL DIVISION – STATE OF | CALTRANS |
| | CALIFORNIA DEPARTMENT OF | |
| 24 | TRANSPORTATION | T: (510) 433-9100 |
| | 111 Grand Avenue, Suite 11-100 | F: (510) 433-9167 |
| 25 | Oakland CA 94612 | |
| | | jeffrey.wilcox@dot.ca.gov |
| 26 | | |
| 27 | | |
| 28 | | |

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

2112585.1

| | | |
|---|---|---|
| 1 | Campbell Hugh Greenup, Esq. | Attorney for St. Paul Cleaners & Laundry, Inc. |
| 2 | CAMPBELL HUGH GREENUP LAW OFFICE | |
| | 23480 Park Sorrento, Suite 250 | T: (818) 591-0044 |
| 3 | Calabasas, CA 91302 | F: (818) 591-1710 |
| 4 | | ccventura@msn.com |
| 5 | Jeffrey S Bolender, Esq. | Attorney for St. Paul Cleaners & Laundry, Inc. |
| 6 | BOLENDER AND ASSOCIATES APC | |
| | 2601 Airport Drive Suite 360 | T: 310-784-2443 |
| 7 | Torrance, CA 90505 | F: 310-784-2444 |
| 8 | | jbolender@bolender-firm.com |

9

| | | |
|---|---|---|
| 10 | Joseph B. Adams, Esq. | Third Party Plaintiff |
| | Farheena Habib, Esq. | Estate of Terrence J. George |
| 11 | Sean G. Herman, Esq. | |
| | BASSI EDLIN HUIE AND BLUM | 415-397-9006 |
| 12 | 500 Washington Street Suite 700 | 415-397-1339 (fax) |
| | San Francisco, CA 94111 | |
| 13 | | fhabib@behblaw.com |
| | | sherman@behblaw.com |
| 14 | | jadams@behblaw.com |
| | | epoppler@behblaw.com |
| 15 | | |
| 16 | Erin Kathleen Poppler, Esq. | Attorney for Donald J. George |
| | BASSI EDLIN HUIE & BLUM LLP | 415-397-9006 |
| 17 | 351 California Street Suite 200 | 415-397-1339 (fax) |
| | San Francisco, CA 94104 | epoppler@behblaw.com |
| 18 | | |
| 19 | Daniel S Kippen, Esq. | Attorney for Darold E. Merritt |
| | VOSS COOK AND THEL | |
| 20 | 895 Dove Street, Suite 450 | dkippen@vctlaw.com |
| | Newport Beach, CA 92660-2998 | |

21
22
23
24
25
26
27
28

2112585.1