# EXHIBIT Q

Bret A. Stone  SBN 190161  BStone@PaladinLaw.com
PALADIN LAW GROUP® LLP
3 W. Carrillo Street, Suite 212
Santa Barbara, CA  93101
Telephone:  (805) 898-9700
Facsimile:   (805) 852-2495

Counsel for Plaintiffs Estate of Betty Goldberg, Deceased, and Estate of Al Goldberg, Deceased, by and through their successor in interest, Daniel Rubin

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF BETTY GOLDBERG, DECEASED, and ESTATE OF AL GOLDBERG, DECEASED, by and through their successor in interest, Daniel Rubin,<br><br>*Plaintiffs*,<br><br>v.<br><br>GOSS-JEWETT COMPANY, INC., *et al.*,<br><br>*Defendants*.<br><br>AND RELATED CROSS-ACTIONS. | Case No. 5:14-CV-01872-DSF(SHx)<br><br>GOLDBERG RESPONSES TO INTERROGATORIES OF DONALD J. GEORGE, SET ONE<br><br>Fed. R. Civ. P. 33 |

PROPOUNDING PARTIES:    Donald J. George

RESPONDING PARTY:         Estate of Betty Goldberg, Deceased

                                              Estate of Al Goldberg, Deceased

TYPE OF DISCOVERY:       Interrogatories – Fed. R. Civ. P. 33

SET NUMBER:                       One

/ / /



## RESPONSE TO INTERROGATORIES

The following responses are based on the information reasonably available to Plaintiffs and Counter-Defendants Estate of Betty Goldberg, Deceased and Estate of Al Goldberg, Deceased through their successor in interest Daniel Rubin (collectively, the "Goldbergs") at this time.

**INTERROGATORY NO. 1:**

IDENTIFY the names and addresses of all PERSONS who have knowledge of any facts or events relating to the subject matter of this action and describe in detail what factual knowledge each possesses.

**RESPONSE TO INTERROGATORY NO. 1:**

Responding party objects to this interrogatory to the extent that it calls for the disclosure of information that is protected by the attorney-client privilege and the attorney work product doctrine. Additionally, responding party objects to this interrogatory as the phrase "all PERSONS who have knowledge of any facts or events relating to the subject matter of this action" is (i) vague and ambiguous; (ii) overbroad; (iii) redundant, unduly burdensome, and oppressive; (iv) compound, conjunctive, disjunctive; and (v) may include events, entities or locations over which the responding party has no control, which are not parties to the litigation, or which are not the responding party to these interrogatories. Responding party objects to this interrogatory to the extent that it calls for speculation. Responding party objects to this interrogatory to the extent that it prematurely calls for expert opinion and for the discovery of non-testifying experts. Responding party objects to this interrogatory to the extent that it calls for information that is equally available to the propounding party.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, a complete answer to this interrogatory would necessitate the examining, auditing, compiling, abstracting, or summarizing of business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party. Responding



party provides the following response in order to provide sufficient detail to allow propounding party to locate and to identify documents relevant to this interrogatory.

Responding party also objects to this interrogatory because it is compound and consists of at least two distinct subparts: subpart (a) asks responding party to identify the names and addresses of all persons who have knowledge of any facts or events relating to the subject matter of this action; subpart (b) asks responding party to describe in detail what factual knowledge each possesses. Responding party will count these as two separate interrogatories. Subpart (a) and subpart (b) are answered below.

Subject to and without waiving the objections above, responding party responds as follows: Goss-Jewett & Co. Inc., ("Goss-Jewett"), Donald George, Darold Merritt, Arthur P. Arns, James W. Ross, Clay Scott Bradfield, PPG Industries, Inc., Pacific Engineering Associates, Inc., State of California Department of Transportation, L & R Dry Cleaning, Inc., Daniel Rubin, all to be contacted through their counsel.

Persons most knowledgeable and/or employees, officers and associates of the City of Santa Barbara, County of Santa Barbara Environmental Health Services, California Regional Water Quality Control Board, California Department of Toxic Substances Control. Subjects of information may include environmental response actions and oversight costs regarding the property located on 220 W. Gutierrez Street, Santa Barbara, California ("the Property").

Carol L. George, former owner of Tri-County Sales Inc., 3750 Gregory Way, #16, Santa Barbara, CA 93105. Subjects of information include operations of Tri-County Sales, installation of tanks, leases, and sale to Goss-Jewett.

Robert F. Schack, 16311 Content Circle, Huntington Beach, CA 92649. Subjects of information include ownership and operations of Goss-Jewett, Estate of Robert W. Schack, leases, and purchase of Tri-County Sales, Inc.

Harlan Anderson, 7460 Van Buren Street, Ventura, CA 93003. Subject of

1  information includes ownership and operations of Goss-Jewett, use of aboveground
2  storage tanks, and abandonment of premises.

3  Donald Leach, contact information unknown. Subject of information includes
4  removal of tanks.

5  Ray Hanacek, 1134 Bolzano Via, Santa Barbara, CA 93111. Subject of
6  information includes the transfer of Tri-County Sales, Inc. from Terry George to
7  Carol George and from Carol George to Goss-Jewett and use of aboveground storage
8  tanks.

9  Jan H. Schienle, last known address 530 Ricardo Avenue, Santa Barbara, CA
10 93109. Subject of information includes a preliminary visual survey of the tank
11 removal area.

12 The following people may have information regarding the insurers' knowledge
13 of contamination: Michael Pritchett, Debora L. Hass, Joe Bommarito and Bob
14 Morrison.

15 Wanda L. Baker and Floyd R. Baker, contact unknown. Subject of information
16 includes ownership and operation of Tri-County Sales, Inc.

17 Robert Olson, former sales director at PPG, to be contacted through PPG's
18 counsel. Subject of information includes PPG distribution of PCE to distributor
19 customers.

20 Glen Wright, last known address 1223 Nopal Street, Santa Barbara, CA 93101.
21 Subject of information includes attempted sale of the Property.

22 California Environmental Geologists and Engineers, Inc., 30423 Canwood St.,
23 Suite 208, Agoura Hills, CA 91301. Subject matter regarding contamination at and
24 around the Property.

25 Maxson Young Associates, Inc., 1 Sansome Street, Suite 950, San Francisco,
26 CA 94104-4405. Subject matter regarding investigation of date of overfill accident.

27 Weston Solutions, Inc., 9301 Oakdale Avenue, Suite 320, Chatsworth, CA
28 91311. Subject matter concerning sources of contamination, groundwater pathways,

surface water pathways, soil exposure and air pathways, vapor intrusion pathways, and emergency response considerations.

Insight Environmental Testing and Consulting, 3009A De La Vina Street, Santa Barbara, CA 93105. Subject matter regarding pre-demolition asbestos and lead survey.

Anacapa Geosciences, located at 3075 Seaview Ave., Ventura, CA 93001. Subject matter regarding contamination at and around the Property.

Campbell Geo, Inc., located at 327 Haley St. #A, Santa Barbara, CA 93101. Subject matter regarding contamination at and around the Property.

BSK Associates, located at 555 W. Locust Avenue, Fresno, CA 93650. Subject matter regarding contamination at and around the Property.

Rincon Consultants, Inc., 180 N. Ashwood Ave., Ventura, CA 93003. Subject matter regarding contamination at and around the Property.

In addition to the above-identified individuals, there may be other persons identified through the course of discovery with knowledge of the facts or events relating to the subject matter of this action.

**INTERROGATORY NO. 2:**

IDENTIFY the names and addresses of all other PERSONS who have submitted opinions and/or oral or written reports regarding the subject matter of this litigation. Set forth the subject matter on which he or she was consulted, the substance of the opinions or reports and the field of expertise of each person named.

**RESPONSE TO INTERROGATORY NO. 2:**

Responding party objects to this interrogatory to the extent that it calls for the disclosure of information that is protected by the attorney-client privilege and the attorney work product doctrine. Additionally, responding party objects to the terms "opinions," "oral reports," and "written reports" in this interrogatory as it is (i) vague and ambiguous; (ii) overbroad; (iii) redundant, unduly burdensome, and oppressive; (iv) compound, conjunctive, disjunctive; and (v) may include events, entities or

locations over which the responding party has no control, which are not parties to the litigation, or which are not the responding party to these interrogatories. Responding party objects to this interrogatory to the extent that it calls for the disclosure of information that is equally available to the propounding party. Responding party objects to this interrogatory to the extent that it calls for speculation. Responding party objects to this interrogatory to the extent that it prematurely calls for expert opinion and for the discovery of non-testifying experts.

Responding party also objects to this interrogatory because it is compound and consists of three distinct subparts: subpart (a) asks responding party to identify the names and addresses of all persons who have submitted opinions and/or oral or written reports regarding the subject matter of this litigation; subpart (b) asks responding party to set forth the subject matter on which he or she was consulted; subpart (c) asks responding party to set forth the substance of the opinions or reports and the field of expertise of each person named. Responding party will count these as three separate interrogatories. Subpart (a) and subpart (b) are answered below. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, an answer to subpart (c) of this interrogatory would necessitate the examining, auditing, compiling, abstracting, or summarizing of business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party. Responding party provides the following response in order to provide sufficient detail to allow propounding party to locate and to identify documents relevant to subpart (c) of this interrogatory.

Subject to and without waiving the objections above, responding party responds as follows: Jan Schienle, last known address 530 Ricardo Avenue, Santa Barbara, CA 93109. Subject matter regarding a preliminary visual survey of the tank removal area.

Pacific Engineering Associates, to be contacted through counsel. Subject matter regarding environmental investigation.



GOLDBERG RESPONSES TO INTERROGATORIES OF DONALD J. GEORGE, SET ONE

County of Santa Barbara Environmental Health Services, 225 Camino Del Remedio, Santa Barbara, CA 93110. Subject matter regarding contamination at and around the Property.

Debora L. Hass, International Environmental Services, Inc., 2040 Algonquin Road, Suite 509, Schaumburg, IL 60173. Subject matter includes remedial status and information about the installation and/or removal of tanks and the source of contamination.

California Regional Water Quality Control Board, Central Coast Region, 81 Higuera Street, Suite 200, San Luis Obispo, CA 93401. Subject matter regarding contamination at and around the Property.

California Environmental Geologists and Engineers, Inc., 30423 Canwood St., Suite 208, Agoura Hills, CA 91301. Subject matter regarding contamination at and around the Property.

Maxson Young Associates, Inc., 1 Sansome Street, Suite 950, San Francisco, CA 94104-4405. Subject matter regarding investigation of date of overfill accident.

California Department of Toxic Substances Control, 1001 I Street, Sacramento, CA 95814-2828. Subject matter regarding contamination at and around the Property.

Weston Solutions, Inc., 9301 Oakdale Avenue, Suite 320, Chatsworth, CA 91311. Subject matter concerning sources of contamination, groundwater pathways, surface water pathways, soil exposure and air pathways, vapor intrusion pathways, and emergency response considerations.

Insight Environmental Testing and Consulting, 3009A De La Vina Street, Santa Barbara, CA 93105. Subject matter regarding pre-demolition asbestos and lead survey.

Anacapa Geosciences, located at 3075 Seaview Ave., Ventura, CA 93001. Subject matter regarding contamination at and around the Property.

Campbell Geo, Inc., located at 327 Haley St. #A, Santa Barbara, CA 93101.



1 Subject matter regarding contamination at and around the Property.

2 BSK Associates, located at 555 W. Locust Avenue, Fresno, CA 93650.
3 Subject matter regarding contamination at and around the Property.

4 Rincon Consultants, Inc., 180 N. Ashwood Ave., Ventura, CA 93003. Subject
5 matter regarding contamination at and around the Property.

6 In addition to the above-identified individuals, there may be other persons
7 identified through the course of discovery who have submitted opinions and/or oral
8 or written reports regarding the subject matter of this litigation.

9 **INTERROGATORY NO. 3:**

10 IDENTIFY any and all facts which support PLAINTIFF'S allegation in
11 Paragraph 9 of their COMPLAINT that "Goss-Jewett Company, Inc. a/k/a Tri-
12 County Sales, Inc. was the alter ego of [DONALD GEORGE], and the corporate
13 entity and [DONALD GEORGE] share a unity of interest such that a separate
14 corporate personality does not exist; the corporation and its principals form a single
15 enterprise."

16 **RESPONSE TO INTERROGATORY NO. 3:**

17 Responding party objects to this interrogatory to the extent that it calls for the
18 disclosure of information that is protected by the attorney-client privilege and the
19 attorney work product doctrine.

20 Subject to and without waiving the objections above, responding party
21 responds as follows: Mr. George was the majority shareholder and President of Tri-
22 County Sales, Inc. from 1968 to 1974. During that time, he maintained the majority
23 shares of the stock of the corporation and suborned the will of the corporation to his
24 own will, thereby destroying any separation between himself and the corporation.
25 There existed a unity of interest and ownership between Mr. George as majority
26 shareholder and President such that any individuality and separateness between Mr.
27 George and the corporation ceased. The corporation was the alter ego of Mr. George
28 in that Mr. George completely controlled, dominated, managed, and operated the



corporation as a mere shell, instrumentality, and conduit through which he carried on his business in the corporate name exactly as he would have conducted it without incorporation, exercising complete control and dominance of the business to such an extent that any individuality or separateness of the corporation and Mr. George did not exist. Responding party further contends that officers and directors of Goss-Jewett, including Mr. George, commingled funds and other assets, diverted corporate funds or assets to other than corporate uses, and treated corporate assets as their own.

**INTERROGATORY NO. 4:**

IDENTIFY each and every RELEASE of HAZARDOUS SUBSTANCES to the ENVIRONMENT located on the PROPERTY.

**RESPONSE TO INTERROGATORY NO. 4:**

Responding party objects to this interrogatory to the extent that it calls for the disclosure of information that is protected by the attorney-client privilege and the attorney work product doctrine. Responding party also objects to this interrogatory to the extent that it calls for an expert opinion.

Subject to and without waiving the objections above, responding party responds as follows: When Mr. George began operations at the Property, PCE was transported to and from the Property in 55 gallon drums. It is also responding party's understanding that Mr. George arranged for the transportation of PCE to and from the Property.

Later, at PPG's request, PCE was delivered by tanker truck to the Property. The tanker trucks were connected to the aboveground storage tank by a hose, which carried PCE from the tank to the truck. The tanker trucks had a nozzle similar to that of a service station, but the nozzle did not shut off automatically when the tank was full; it only shut off when the person holding it let go. PCE residue was released when the tanker truck driver loaded the hose back onto the truck by hand. PCE was also released when the tanker truck driver emptied the hose into storm drain. Filling the saddle tanks of the delivery trucks similarly relied on the person holding the

nozzle to listen to the sound it made and to stick his finger inside the tank to know when it was full. After filling, the hose was supposed to be hung up on the tank, but on occasion it would be left on the ground. In addition, there was an overfill accident comprising several gallons of lost PCE.

Additional releases of hazardous substances may be identified during the course of the litigation.

**INTERROGATORY NO. 5:**

If YOU contend that DONALD GEORGE transported or arranged for the transport of HAZARDOUS SUBSTANCES to any part of the PROPERTY, state all facts which support this contention and state the IDENTITY of all PERSONS who have knowledge of these facts.

**RESPONSE TO INTERROGATORY NO. 5:**

Responding party objects to this interrogatory to the extent that it calls for the disclosure of information that is protected by the attorney-client privilege and the attorney work product doctrine. Responding party objects to this interrogatory to the extent that it calls for an expert opinion. Responding party objects to the terms "transported" and "arranged" as they are (i) vague and ambiguous; (ii) overbroad; (iii) redundant, unduly burdensome, and oppressive; (iv) compound, conjunctive, disjunctive; and (v) may include events, entities or locations over which the responding party has no control, which are not parties to the litigation, or which are not the responding party to these interrogatories. Responding party objects to this interrogatory to the extent that it calls for speculation. Responding party objects to this interrogatory to the extent that it calls for the disclosure of information that is equally available to the propounding party.

Responding party also objects to this interrogatory because it is compound and consists of two distinct subparts: subpart (a) asks responding party to state all facts which support its contention that Mr. George transported or arranged for the transport of hazardous substances to the Property; subpart (b) asks responding party to state



the identity of all persons who have knowledge of these facts. Responding party will count these as two separate interrogatories. Subpart (a) and subpart (b) are answered below. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, an answer to subpart (b) of this interrogatory would necessitate the examining, auditing, compiling, abstracting, or summarizing of business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party. Responding party provides the following response in order to provide sufficient detail to allow propounding party to locate and to identify documents relevant to this interrogatory.

Subject to and without waiving the objections above, responding party responds as follows: When Mr. George began operations at the Property, PCE was transported to and from the Property in 55 gallon drums. Mr. George testified that he subsequently made arrangements with PPG for the installation of a 5000-gallon aboveground storage tank. PCE was handled and stored in the aboveground storage tank at the time Mr. George managed and controlled the operations. The tanker trucks that delivered PCE to the Property had a nozzle similar to that of a service station, but the nozzle did not shut off automatically when the tank was full; it only shut off when the person holding it let go. Filling the saddle tanks of the delivery trucks similarly relied on the person holding the nozzle to listen to the sound it made and to stick his finger inside the tank to know when it was full. After filling, the nozzle was supposed to be hung up on the tank, but on occasion it would be left on the ground. In addition, there was an overfill accident comprising several gallons of lost PCE.

Further incidents where Mr. George transported or arranged for the transport of hazardous substances to the Property may be identified during the course of the litigation.

Mr. George, the California Regional Water Quality Control Board and Maxson Young Associates, Inc. have knowledge of these facts. Responding party also

incorporates the people and/or entities identified in response number one and response number two, above, as they may have knowledge of these facts.

In addition to the above-identified individuals, there may be other persons identified through the course of discovery with knowledge of these facts.

**INTERROGATORY NO. 6:**

Identify what dates (i.e. start and end month, day, and/or year) Tri-County Sales, Inc. earned any revenue from operations at the PROPERTY while PLAINTIFFS owned and operated Tri-County Sales, Inc.

**RESPONSE TO INTERROGATORY NO. 6:**

On December 29, 1967, Al and Betty Goldberg incorporated Tri-County Sales, Inc. On February 14, 1968, Al and Betty Goldberg sold Tri-County Sales, Inc. to Floyd N. Baker and Wanda L. Baker. Responding party has performed a diligent search and made a reasonable inquiry, but no information could be found about revenues earned during this brief time.

**INTERROGATORY NO. 7:**

IDENTIFY any and all PERSONS and/or ENTITIES who delivered or caused to be delivered PCE to the PROPERTY while PLAINTIFFS owned and operated Tri-County Sales, Inc.

**RESPONSE TO INTERROGATORY NO. 7:**

On December 29, 1967, Al and Betty Goldberg incorporated Tri-County Sales, Inc. On February 14, 1968, Al and Betty Goldberg sold Tri-County Sales, Inc. to Floyd N. Baker and Wanda L. Baker. Responding party has performed a diligent search and made a reasonable inquiry, but no information could be found about the identity of anyone who delivered PCE to the Property during this brief time.

**INTERROGATORY NO. 8:**

With regard to the PCE delivered and/or stored at the PROPERTY and discussed in Interrogatory 7, IDENTIFY all practices or methods PLAINTIFFS used in delivering or otherwise supplying PCE to customers of Tri-County Sales, Inc.



while PLAINTIFFS owned and operated Tri-County Sales, Inc.

**RESPONSE TO INTERROGATORY NO. 8:**

Responding party objects to this interrogatory to the extent that it calls for the disclosure of information that is protected by the attorney-client privilege and the attorney work product doctrine. Responding party also objects to the phrase "all practices or methods" as it is (i) vague and ambiguous; (ii) overbroad; (iii) redundant, unduly burdensome, and oppressive; and (iv) compound, conjunctive, and disjunctive.

Subject to and without waiving the objections above, responding party responds as follows: On December 29, 1967, Al and Betty Goldberg incorporated Tri-County Sales, Inc. On February 14, 1968, Al and Betty Goldberg sold Tri-County Sales, Inc. to Floyd N. Baker and Wanda L. Baker. During this brief time, PCE was delivered to the Property by truck in sealed drums; there were no aboveground storage tanks. The sealed drums were then delivered by truck to customers.

**INTERROGATORY NO. 9:**

IDENTIFY PLAINTIFF'S RELATIONSHIP with 220 Gutierrez, LLC and any DOCUMENTS which evidence PLAINTIFF'S RELATIONSHIP with 220 W. Gutierrez, LLC.

**RESPONSE TO INTERROGATORY NO. 9:**

Responding party objects to this interrogatory to the extent that it calls for the disclosure of information that is protected by the attorney-client privilege and the attorney work product doctrine. Responding party objects to this question as it calls for proprietary, confidential, and/or trade secret information. Responding party objects to this interrogatory as it seeks information not relevant to the subject matter of this lawsuit and not calculated to lead to the discovery of admissible evidence. Responding party objects to the term "RELATIONSHIP" as it is (i) vague and ambiguous; (ii) overbroad; (iii) redundant, unduly burdensome, and oppressive.



Responding party also objects to this interrogatory because it is compound and consists of two distinct subparts: subpart (a) asks responding party to identify Plaintiff's relationship with 220 Gutierrez, LLC; subpart (b) asks responding party to identify any documents which evidence Plaintiff's relationship with 220 W. Gutierrez, LLC. Responding party will count these as two separate interrogatories. Subpart (a) and subpart (b) are answered below.

Subject to and without waiving the objections above, responding party responds as follows: 220 W. Gutierrez, LLC is a prospective purchaser of the Property from Daniel Rubin, as administrator of the decedent, Betty Goldberg, estate.

Responding party has included the contract by and between Daniel Rubin, as administrator of the decedent, Betty Goldberg, estate, and 220 W. Gutierrez, LLC in its response to propounding party's request for production. Responding party has also included the addendums to the contract in its response to propounding party's request for production.

**INTERROGATORY NO. 10:**

IDENTIFY the names of any and all PERSONS and/or ENTITIES who have a present ownership interest in the PROPERTY.

**RESPONSE TO INTERROGATORY NO. 10:**

Responding party objects to the phrase "present ownership interest" in this interrogatory as it is (i) vague and ambiguous; (ii) overbroad and (v) may include events, entities, or locations over which the responding party has no control, which are not parties to the litigation, or which are not the responding party to these interrogatories.

Subject to and without waiving the objections above, responding party responds as follows: Dan Rubin, as administrator of the decedent, Betty Goldberg, estate, has entered into a purchase and sale agreement with 220 W. Gutierrez, LLC.

**INTERROGATORY NO. 11:**

IDENTIFY all practices or methods used to dispose of HAZARDOUS

1  SUBSTANCES, including but not limited to PCE, on or from the PROPERTY while
2  PLAINTIFFS owned and operated Tri-County Sales, Inc., at the PROPERTY.

3  **RESPONSE TO INTERROGATORY NO. 11:**

4  Responding party objects to this interrogatory to the extent that it calls for the
5  disclosure of information that is protected by the attorney-client privilege and the
6  attorney work product doctrine. Responding party also objects to this interrogatory
7  as the term "dispose" is (i) vague and ambiguous; (ii) overbroad; (iii) redundant,
8  unduly burdensome, and oppressive.

9  Subject to and without waiving the objections above, responding party
10 responds as follows: On December 29, 1967, Al and Betty Goldberg incorporated
11 Tri-County Sales, Inc. On February 14, 1968, Al and Betty Goldberg sold Tri-
12 County Sales, Inc. to Floyd N. Baker and Wanda L. Baker. Responding party has
13 performed a diligent search and made a reasonable inquiry, but no information could
14 be found about the disposal of hazardous substances during this brief time.

15 **INTERROGATORY NO. 12:**

16 IDENTIFY any and all response costs referred to in Paragraphs 37, 50, 122
17 and 126 of PAINTIFF'S COMPLAINT which state that as a result of Defendants'
18 releases of hazardous substances, hazardous wastes, and/or solid wastes at the
19 PROPERTY, Plaintiffs have incurred and continue to incur response costs in order
20 to investigate, test, site assess, monitor, remove and remediate CONTAMINATION
21 at the PROPERTY consistent with the NCP.

22 **RESPONSE TO INTERROGATORY NO. 12:**

23 Responding party objects to this interrogatory to the extent that it calls for the
24 disclosure of information that is protected by the attorney-client privilege and the
25 attorney work product doctrine. Responding party objects to this interrogatory to the
26 extent that it prematurely calls for expert opinion. Pursuant to Rule 33(d) of the
27 Federal Rules of Civil Procedure, an answer to this interrogatory would necessitate
28 the examining, auditing, compiling, abstracting, or summarizing of business records,

and the burden of deriving or ascertaining the answer will be substantially the same for either party. Responding party provides the following response in order to provide sufficient detail to allow propounding party to locate and to identify documents relevant to this interrogatory.

Subject to and without waiving the objections above, responding party responds as follows: Documents produced in this action reveal that the Goldbergs incurred response costs in excess of $230,000 as of November, 15, 1995 in order to investigate, remove, and remediate the environmental contamination at the Property. The breakdown of these costs are currently unknown, but are expected to include oversight costs from the California Regional Water Quality Control Board as well as invoices from Pacific Engineering, Anacapa Geosciences, and Jan Schienle.

Since 2012, the Goldbergs have incurred additional response costs in excess of $150,000 including: the California Department of Toxic Substances Control, Campbell Geo, Inc., BSK Associates, Insight Environmental, Inc., and Rincon Consultants, Inc.

Additional response costs may be identified or incurred during the course of this litigation.

**INTERROGATORY NO. 13:**

With respect to any response costs referred to in Paragraphs 37, 50, 122 and 126 of PLAINTIFF'S COMPLAINT, IDENTIFY those response costs paid for by any PERSON or ENTITY other than PLAINTIFFS.

**RESPONSE TO INTERROGATORY NO. 13:**

Responding party objects to this interrogatory to the extent that it calls for the disclosure of information that is protected by the attorney-client privilege and the attorney work product doctrine. Responding party objects to this interrogatory to the extent that it calls for the disclosure of information that is equally available to the propounding party. Responding party also objects to this interrogatory to the extent that it prematurely calls for expert opinion.



Subject to and without waiving the objections above, responding party responds as follows: Responding party has performed a diligent search and made a reasonable inquiry, but no information could be found about whether response costs have been paid for by anyone other than the Goldbergs. Additional response costs may be identified or incurred during the course of this litigation.

**INTERROGATORY NO. 14:**

With respect to any response cost referred to in Paragraphs 37, 50, 122 and 126 of PLAINTIFF'S COMPLAINT, IDENTIFY those response costs incurred prior to the filing of PLAINTIFF'S COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 14:**

Responding party objects to this interrogatory to the extent that it calls for the disclosure of information that is protected by the attorney-client privilege and the attorney work product doctrine. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, an answer to this interrogatory would necessitate the examining, auditing, compiling, abstracting, or summarizing of business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party. Responding party provides the following response in order to provide sufficient detail to allow propounding party to locate and to identify documents relevant to this interrogatory.

Subject to and without waiving the objections above, responding party responds as follows: Documents produced in this action reveal that the Goldbergs incurred response costs in excess of $230,000 as of November, 15, 1995 in order to investigate, remove, and remediate the environmental contamination at the Property. The breakdown of these costs are currently unknown, but are expected to include oversight costs from the California Regional Water Quality Control Board as well as invoices from Pacific Engineering, Anacapa Geosciences, and Jan Schienle.

Since 2012, the Goldbergs have incurred additional response costs in excess of $150,000 including: the California Department of Toxic Substances Control,



Campbell Geo, Inc., BSK Associates, Insight Environmental, Inc., and Rincon Consultants, Inc.

Additional response costs may be identified or incurred during the course of this litigation.

**INTERROGATORY NO. 15:**

IDENTIFY any and all actions PLAINTIFFS have undertaken to REMEDIATE the PROPERTY.

**RESPONSE TO INTERROGATORY NO. 15:**

Responding party objects to this interrogatory to the extent that it calls for the disclosure of information that is protected by the attorney-client privilege and the attorney work product doctrine. Responding party objects to this interrogatory as the term "REMEDIATION" is (i) vague and ambiguous; (ii) overbroad; (iii) redundant, unduly burdensome, and oppressive. Responding party also objects to this interrogatory because it requests information that is equally available to the propounding party.

Subject to and without waiving the objections above, responding party responds as follows: Since the contamination of the Property was discovered in 1991, the Goldbergs have performed extensive environmental investigations and implemented various interim remedial measures including but not limited to: background investigations, feasibility analyses, groundwater monitoring, well installations, soil borings, soil sampling, soil vapor analyses, soil removal, and soil and groundwater disposal. Responding party also hired contractors to investigate the migration of PCE through the soil and groundwater by surveying the geologic and hydrologic characteristics of the site.

Responding party has attempted to resolve the alleged liability at and emanating from the operations located on the Property by seeking contribution from the responsible parties in order to have the site investigated and remediated. The current litigation is still ongoing and is part and parcel of responding party's efforts



to have the Property fully investigated and remediated while avoiding or minimizing the Goldberg's alleged liability.

DATED: September 14, 2015          PALADIN LAW GROUP® LLP


/s/ *Bret A. Stone*

_____
Bret A. Stone
Counsel for Estate of Betty Goldberg, Deceased, and Estate of Al Goldberg, Deceased, by and through their successor in interest, Daniel Rubin

