UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

| Case No. | EDCV 14-1872 DSF (SHx) | | Date | 6/3/16 |
|---|---|---|---|---|
| Title | Estate of Betty Goldberg, et al. v. Goss-Jewett Co., Inc., et al. | | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge | |
|---|---|---|
| Debra Plato | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**    (In Chambers) Order GRANTING Motion for Summary Judgment (Dkt. No. 265)

Various insurance company intervenors have moved for summary judgment on various grounds. The principal ground for the motion is that Plaintiffs Estate of Betty Goldberg and Estate of Al Goldberg have not incurred any costs of response under CERCLA within the limitations period.

## I. BACKGROUND

Al and Betty Goldberg, a married couple now both deceased, were owners of property at 220 West Gutierrez Street, Santa Barbara, California (the Property). Dry cleaning supply operations were undertaken at the Property for many years – resulting in perchloroethylene contamination. On September 29, 1993, the Regional Water Quality Control Board issued a Cleanup and Abatement Order regarding the contamination. On June 8, 1994, the Goldbergs filed a CERCLA suit against many of the same defendants as are defendants in this case. Al Goldberg died on September 13, 1994. The 1994 case went dormant in 1996 and remained dormant for more than 17 years. In the meantime, Betty Goldberg died on January 14, 2003.

In July 2012, the California Department of Toxic Substances Control (DTSC) issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order concerning contamination at the Property. The Order found that the Property was contaminated with hazardous substances and ordered the cleanup of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Property.  RJN No. 9.  In October 2013, 220 W. Gutierrez, LLC (Gutierrez LLC) and Daniel Rubin, as the trustee for the Goldberg Family Revocable Trust, entered into an agreement for Gutierrez LLC to purchase the Property.  The members of Gutierrez LLC are lawyers representing Plaintiffs in this case.  It was apparently later discovered that the Goldberg Family Revocable Trust did not hold title to the Property and the seller was changed to the Estate of Betty Goldberg.  Gutierrez LLC has reached an agreement with DTSC to investigate and clean up pollution on the Property and DTSC has agreed not to sue Gutierrez LLC if those plans are carried out.  RJN No. 14.[1]  The DTSC agreement represents that "the current property owner does not have the financial resources to perform the investigation or cleanup."  Id. at 2.  On September 1, 2014, a petition to open the probate estate of Betty Goldberg was filed in Orange County Superior Court.[2]  RJN No. 15.  Daniel Rubin stated in the petition that the estate had no personal property or income and the real property was worth nothing.  Id. at 2.  He also represented that there was a buyer for the property that had agreed to perform the required environmental cleanup.  RJN No. 16 at 7.  On October 16, 2014, Daniel Rubin was appointed administrator of the Estate of Betty Goldberg with full powers for the purpose of completing the transfer of the Property only.  RJN No. 17.  On May 27, 2015, Daniel Rubin filed a notice of proposed action in the probate court stating that he was going to sell the Property to Gutierrez LLC and that "Buyer does all environmental remediation on the property prior to the sale closing."  RJN No. 18.

In March 2014, purporting to represent (the deceased) Al and Betty Goldberg, Plaintiffs' counsel attempted to resurrect the long-dormant 1994 action.[3]  After notice and an opportunity to be heard, this Court dismissed the 1994 action for lack of prosecution.  On September 8, 2014, Rubin filed this case in the names of the Estate of Betty Goldberg and the Estate of Al Goldberg.  Various intervening insurance companies now move for summary judgment.

---

[1] Plaintiffs have made numerous objections to Intervenors' request for judicial notice.  All of the materials included in the request for judicial notice referenced in this Order are matters of public record and subject to judicial notice.

[2] Despite being named as a plaintiff in this case, there is no evidence that an "Estate of Al Goldberg" exists or has ever existed.

[3] The initial request for a status conference references the Goldbergs' "personal representative," but there is no evidence to suggest that a personal representative had been appointed for any relevant estate at that time.  See CV 94-3834 DSF, Dkt. No. 158 at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

## II.  LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "This burden is not a light one."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  But the moving party need not disprove the opposing party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial.  Id. at 323-24; Fed. R. Civ. P. 56(c)(1). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ."  Id. at 252.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues."  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992).  Rather, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (internal quotation marks and ellipsis omitted).

## III.  ANALYSIS

A.   **Recovery Under CERCLA Section 107 Requires Actual Recoverable Expenditure of Money Responding to an Environmental Hazard**

A claim under section 107 of CERCLA requires that the plaintiff make some outlay of money responding to the environmental problem prior to filing suit.  In re Dant & Russell, Inc., 951 F.2d 246, 249-50 (9th Cir. 1991).  Citing out of circuit precedent, Plaintiffs argue, among other things, that they have "incurred" costs by the fact that they are potentially liable to state and federal authorities for cleanup under CERCLA and related state laws.  The Ninth Circuit, however, has held otherwise.  Id.  For Plaintiffs' section 107 claim to succeed, they must show that they have paid money for response costs, not that they might have to pay money in the future.  Id.  (rejecting section 107

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

claim based on "bare assertions" that plaintiff would perform future cleanup).

**B.      A Contribution Claim Under CERCLA Section 113(f) Requires that the Plaintiff Have Been Subject to a Civil Action Under Section 106 or 107**

Plaintiffs admit that they have not been subject to an action under CERCLA section 106 or 107.  Therefore, their section 113(f) claim fails.  Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 161 (2004).

**C.      Any Action Based on Response Costs Incurred in the 1990s is Barred by the Statute of Limitations**

Plaintiffs claim that Al and Betty Goldberg spent money in the 1990s on evaluating and possibly cleaning the Property.  There is some inadequately authenticated documentary evidence in the record suggesting that the Goldbergs may have spent money on site investigation and monitoring.  See Pls. SSUF 136-142.  But even if the costs could be properly documented, any recovery is barred by the statute of limitations.

There are two types of cleanup actions under CERCLA – removal actions and remedial actions.  CERCLA claims are time-barred if they are brought more than three years after completion of a removal action or more than six years after initiation of a remedial action.  The Ninth Circuit has recognized that the distinction between the two types of actions in the CERCLA statute is opaque.  United States v. W.R. Grace & Co., 429 F.3d 1224, 1241 (9th Cir. 2005) ("The meanings of "removal" and "remedial action" under CERCLA are inescapably vague.").  However, a remedial action does not begin until the approval of the final remedial action plan for the site.  See California ex rel. California Dep't of Toxic Substances Control v. Neville Chem. Co., 358 F.3d 661, 667 (9th Cir. 2004).  There is no evidence that a final remedial action plan was approved in the 1990s.  This means that any costs incurred by the Goldbergs in the 1990s were part of a removal action and any claim to recover them must be brought within three years of completion of that removal action.

This raises the question of if and when the removal action ended.  Plaintiffs argue that the removal action is still continuing because the pollution at the Property has not been remediated.  The moving parties argue that the removal action ended sometime in the 17 years that no action was taken on the Property.  Plaintiffs provide no evidence to suggest that any recoverable costs were incurred on the Property between the abandonment of the 1994 lawsuit and the 2012 DTSC order.  Courts have found removal actions to have continued for long periods and have even suggested that there is only one

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

removal action for a given pollution problem on a given property.  See, e.g., California
Dep't of Toxic Substances v. Alco Pacific, Inc., 308 F. Supp. 2d 1124 (C.D. Cal. 2004).
However, the Court has not found any case that allowed the plaintiff to resurrect a long
concluded removal action.  Nor has it found one that holds that a removal action does not
end until the pollution is removed even if no work has been undertaken for years.  Even
in taking a liberal view of the duration of removal actions, one Circuit was skeptical of
resurrected removal actions for the purpose of avoiding the statute of limitations.  See
Kelley v. E.I. DuPont de Nemours & Co., 17 F.3d 836, 844 (6th Cir. 1994) ("Moreover,
while there may be cases where the EPA or a state might be tempted to revive a dead
cause of action by instituting new removal activity, this clearly is not the case here.").
Plaintiffs cannot patch together two responses separated by 17 years of complete
inactivity.  There is no reason to consider the actions in the two time periods to be part of
one continuous removal action other than that they involve the same property and that it
would be a convenient solution to Plaintiffs' limitations problem.  Plaintiffs argue that
because the work in the 1990s did not remove the pollution from the Property, the
removal action never ended.  But a party cannot indefinitely extend the statute of
limitations simply by never finishing the work.  For the statute of limitations to have any
force, the duration of a removal action has to be based on the continuing – or lack of –
actions by the plaintiff at the site in question.

**D.      Plaintiffs Have Not Provided Evidence that They Incurred Recoverable
Response Costs Within the Statute of Limitations**

Plaintiffs also argue that they have incurred recoverable expenses since the DTSC
order in 2012.  For most of these expenses there is no evidence they were paid by
Plaintiffs.  See SUF ¶¶ 66-70.  The only evidence of direct payment of possibly
recoverable costs by Plaintiffs submitted with the original opposition was a declaration
from an attorney at Best Best & Krieger LLP, Danielle Sakai.  Sakai claimed that she was
retained by "Daniel Rubin and the Estate of Betty Goldberg" in 2012 and invoices were
paid by "Daniel Rubin and the Estate of Betty Goldberg."  This phrasing, of course,
obscures who actually retained and paid Best Best & Krieger – was it Rubin as an
individual or the Estate?  No retainer agreement, invoices, or other supporting evidence
were submitted to support Sakai's declaration.  More fundamentally, it is unclear how the
Estate of Betty Goldberg could have retained and paid Best Best & Krieger in 2012 when
the estate was not opened in probate and Rubin was not appointed administrator until
2014.  See Cal. Probate Code § 8400(a).  The record also reflects that Sakai was not
properly disclosed pursuant to Rule 26.  Apparently, Plaintiffs disclosed her as a witness
after the close of business on the last day of the discovery period.  And even then Sakai
was not disclosed as a witness on costs incurred by Plaintiffs – she was disclosed as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

witness on "real estate transaction." The Court is also unsure whether the retainer agreement and invoices were disclosed in any way to the other parties in the case even though they would have been subject to initial disclosure under Rule 26(a)(1)(A)(iii).[4]

Given these questions, the Court requested supplemental briefing on this issue. That supplemental briefing, along with the associated declarations, makes clear that the original Sakai declaration was false and that the Estate of Betty Goldberg did not retain Best Best & Krieger or pay its invoices. <u>See, e.g.</u>, Suppl. Sakai Decl. ¶ 2 (Dkt. No. 375); Suppl. Opp'n at 16 (Dkt. No. 374). Plaintiffs' response – and their counsel's response – seems to be that it does not matter. <u>See</u> Suppl. Opp'n at 12-15. But, of course, it does matter. The main point of the Intervenors' motion is that the Plaintiff Estates have not paid any recoverable costs under CERCLA and, therefore, cannot be CERCLA plaintiffs under § 107. The precise identity of the party or parties that paid recoverable costs was placed directly at issue. The Goldberg Family Revocable Trust is a distinct entity from the Goldbergs and their estates. Daniel Rubin, individually, is a distinct person from the Goldbergs and their estates and the Trust. It is not sufficient to say that the money paid could have, theoretically, been paid by the Estate of Betty Goldberg. The fact is that it was not. Plaintiffs provide no authority for their attempt to have payments made by the Trust be construed as payments made by the Estate of Betty Goldberg. (An estate that did not even exist at the time of the payments, no less.) Further, as the Intervenors point out, the Property was placed in the name of Betty Goldberg, personally, but leases on the Property continued to be entered with the Trust as landlord and the rents from the Property continued to be placed in the Trust's accounts. All of this happened and continued to happen after the environmental liability associated with the Property became known. Plaintiffs – and the various associated entities and persons – cannot move assets into the Trust and away from the environmental liability when it suits them, and then claim there is no distinction between the Trust and the Estates when that suits them.

In short, there is no evidence that the named Plaintiffs in this case incurred – <u>i.e.</u>, paid – any recoverable costs within the limitations period.

**E.** **Declaratory Relief For Future Costs Cannot be Sought Unless Recovery Costs Have Been Incurred and the Imminent Sale of the Property Also Makes Declaratory Relief in Favor of Plaintiffs Inappropriate**

---

[4] Plaintiffs' counsel's response does not come close to excusing the failure to disclose Sakai under Rule 26(a)(1). <u>See</u> Suppl. Stone Decl. ¶¶ 5-6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

CERCLA declaratory relief cannot be granted unless the plaintiff has already incurred cleanup costs recoverable under section 107.  City of Colton v. Am. Promotional Events, Inc. - West, 614 F.3d 998, 1007-1008 (9th Cir. 2010).  As discussed above, Plaintiffs have failed to demonstrate that they have incurred costs associated with the cleanup of the Property.

Declaratory relief is also inappropriate for the independent reason that Plaintiffs are unlikely to suffer future response costs related to the Property.  The sale agreement, statements to the probate court, and the agreement with the DTSC all show that Gutierrez LLC is the party likely to incur costs in the future, not Plaintiffs.[5]

## F.    Plaintiffs' State Law Claims Also Fail

The California Hazardous Substance Account Act (HSAA) also contains a requirement that the plaintiff "incur" costs before filing suit.  Cal. Health & Safety Code § 2563(d).  Plaintiffs do not contest that the HSAA is typically interpreted in accord with CERCLA.  See United Alloys, Inc. v. Baker, 797 F. Supp. 2d 974, 1004 (C.D. Cal. 2011).  Therefore, the HSAA claim fails for the same reason as the CERCLA section 107 claim.  In addition, the HSAA does not authorize suits by estates.  See Cal. Health & Safety Code § 25319 (definition of "person" fails to include estates).  Plaintiffs try to argue that the real plaintiff is Daniel Rubin, but the case has been brought by the estates and the Estate of Betty Goldberg – the Property owner – is the real party in interest.

The indemnity claims also fail.  Indemnity requires that a plaintiff have paid damages or face liability that should be paid by another.  See Western Steamship Lines, Inc. v. San Pedro Peninsula Hosp., 8 Cal.4th 100, 110 (1994).  As discussed above, Plaintiffs have not demonstrated that they have paid any amounts or face future liability

---

[5] Despite this, Plaintiffs' counsel argues that Plaintiffs could be liable for cleanup – particularly for cleanup of off-site contamination.  This argument prompted the Court to request supplemental briefing on a possible actual conflict of interest between Plaintiffs and Plaintiffs' counsel, some of whom are members of Gutierrez LLC.  While it appears that the conflict could potentially be waived, the Court is not convinced on the current record that any waiver obtained from Rubin was fully informed.  The possible conflict does not appear to affect the outcome of this motion because, if anything, the possible conflict encourages Plaintiffs' counsel to make arguments that would overcome summary judgment – i.e., arguments that Plaintiffs have current and future CERCLA liability.  The Court will require more information about the possible conflict and the purported waiver if Plaintiffs continue to be a part of the case with current counsel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### MEMORANDUM

that should be paid by another.  To the degree that cost payments from the 1990s could be demonstrated with admissible evidence, the contractual indemnification claims are barred by the statute of limitations[6] and the equitable indemnification claims are barred by laches.[7]

## IV.  CONCLUSION

The motion for summary judgment is GRANTED.  The grounds for the granting of the Intervenors' motion for summary judgment appear to apply with equal force to the claims of all Defendants.  The parties are to file a joint submission of no more than seven pages no later than June 10, 2016, addressing whether all of Plaintiffs' claims should be dismissed against all Defendants and how dismissal of all of Plaintiffs' claims would affect the pending counterclaims, crossclaims, and third-party claims.

Danielle Sakai and Bret Stone are ordered to appear personally before the Court on June 20, 2016 at 2:30 p.m. and show cause why the Court should not refer the matter of the false Sakai declaration to the State Bar for appropriate discipline and to the United States Attorney's Office.

IT IS SO ORDERED.

---

[6] The statute of limitations for a contract claim is four years.  Cal. Code Civ. Proc. § 337.

[7] The Court sees no reason why the laches discussion in the Court's December 16, 2014 order should not apply with equal force to equitable indemnification claims related to liabilities from the 1990s.