1   Bret A. Stone   SBN 190161  BStone@PaladinLaw.com
    Brian R. Paget  SBN 168694  BPaget@PaladinLaw.com
2   PALADIN LAW GROUP® LLP
    220 W. Gutierrez Street
3   Santa Barbara, CA  93101
    Telephone:   (805) 898-9700
4   Facsimile:   (805) 852-2495

5   Counsel for Third-Party Defendant and
    Cross-Claimant 220 W. Gutierrez, LLC
6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10  ESTATE OF BETTY GOLDBERG,          Case No. 15:14-cv-01872-DSF-AFMx
    DECEASED and ESTATE OF AL
11  GOLDBERG, DECEASED, by and         Assigned for all purposes to:
    through their successor in interest  Judge Dale S. Fischer
12  DANIEL RUBIN,
                                        220 W. GUTIERREZ, LLC'S
13        *Plaintiff,*                  AMENDED CROSSCLAIMS
                                        FOR:
14             *v.*                       1.  RCRA § 7002(a)(1)(B)
                                          2.  CERCLA § 113(f)
15  GOSS-JEWETT COMPANY, INC, *et al.,*   3.  CERCLA § 107(a)
                                          4.  HSAA § 25363(d)
16        *Defendants,*                   5.  Public Nuisance
                                          6.  Private Nuisance
17  ─────────────────────────────        7.  Trespass
    220 W. GUTIERREZ, LLC, a Delaware     8.  Declaratory Relief
18  limited liability company,
                                        Action filed:  September 8, 2014
19        *Cross-claimant,*             Trial:  None set

20             *v.*

21  GOSS-JEWETT COMPANY, INC.
    a/k/a TRI-COUNTY SALES, INC., a
22  suspended California Corporation;
    ARTHUR P. ARNS; ESTATE OF
23  ROBERT W. SCHACK, DECEASED;
    ESTATE OF BENJAMIN F.
24  FOHRMAN, DECEASED; DONALD J.
    GEORGE; DAROLD E. MERRITT;
25  JAMES W. ROSS; ESTATE OF
    TERRENCE J. GEORGE a/k/a TERRY
26  GEORGE, DECEASED; CAROL L.
    GEORGE; and ROES 1 through 10,
27  inclusive,

28        *Cross-defendants,*



AND RELATED COUNTERCLAIMS, CROSS-CLAIMS AND THIRD-PARTY CLAIMS.

Third-party defendant 220 W. Gutierrez, LLC ("220 LLC" or "Cross-claimant") brings these amended crossclaims[1] against: Goss-Jewett Company, Inc. a/k/a Tri-County Sales, Inc.; Arthur P. Arns; Estate of Robert W. Schack, Deceased; Estate of Benjamin F. Fohrman, Deceased; Donald J. George; Darold E. Merritt; Estate of Terrence J. George a/k/a Terry George, Deceased; Carol L. George; and Roes 1 through 10 inclusive (collectively, "Cross-defendants"), and alleges upon knowledge as to its own acts, and upon information and belief as to the acts of all others, as follows:

## NATURE OF THE ACTION

1.   Cross-claimant files these crossclaims in order to avoid or minimize its alleged liability associated with responding to the environmental contamination alleged in the Second Amended Third-Party Complaint of Intervenors and Certain Defendants. Dkt. No. 558.

2.   The contamination originates from 220 W. Gutierrez Street, Santa Barbara, California (the "Property") and has migrated and continues to migrate through the soil and groundwater east to Mission Creek and south across Highway 101 (the "Site").

3.   Cross-Claimant is the current owner of the Property, having purchased the Property pursuant to a Prospective Purchaser Agreement ("PPA") with the California Department of Toxic Substances Control ("DTSC") that settled and resolved Cross-Claimant's liability for the contamination that would have or

---

[1] The claims alleged herein are referred to as "cross-claims" for simplicity sake. However, the claims against the Estate of Schack, Deceased, and the Estate of Fohrman, Deceased, are more properly referred to as "counterclaims," *see* Fed. R. Civ. P. 14(a)(2)(B), and the claims against Carol George are more properly referred to as "fourth-party claims," *see* Fed. R. Civ. P. 14(a)(5).



potentially would have resulted from it becoming owner of the Property.   In consideration therefor, Cross-Claimant agreed to perform certain work to address the contamination at the Property itself; nothing off-Property. Cross-claimant is in compliance with the PPA.

4.   Prior to entering into the PPA, Cross-claimant had no involvement at the Property other than as it relates to negotiating the agreement to purchase the Property. Accordingly, Cross-Claimant did not cause or contribute to any of the contamination at or emanating from the Property.

5.   Cross-defendants include the former tenants of the Property (a chemical supply business) and several of their officers, directors, and shareholders whose operations at the Property resulted in the Property becoming contaminated.

6.   Cross-claimant seeks to recover from Cross-defendants the costs it has incurred and will incur to address the contamination, to recover from Cross-defendants the damages it has suffered because of the harm caused to the Property by Cross-defendants, to obtain an injunction compelling Cross-defendants to investigate and cleanup the contamination at, and to obtain regulatory closure of, the Site, and to obtain a declaratory judgment in favor of Cross-claimant and against Cross-defendants as to these matters.

## PARTIES

### *Cross-claimant*

7.  220 LLC is a bona fide purchaser of the Property pursuant to an Agreement and Covenant Not to Sue a/k/a PPA with DTSC entered into on December 17, 2014.  220 LLC took title to the Property on August 8, 2016 and is the current owner of the Property. Effective August 8, 2016, the PPA settled and resolved 220 LLC's potential liability for the contamination that might have resulted from it becoming owner of the Property. The PPA also bars contribution claims against 220 LLC related to the contamination under all applicable state or federal statutory or common law. 220 LLC is in compliance with the PPA.



-3-

*Cross-defendants*

8.  Goss-Jewett & Co., Inc. ("Goss-Jewett") a/k/a Tri-County Sales, Inc. ("Tri-County"), is a suspended California corporation that operated the chemical supply business at, and was a tenant of and signed a lease for, the Property, including the operation and abandonment of aboveground storage tanks ("ASTs") containing tetrachloroethylene ("PCE"), as well as the handling of other hazardous substances generated, stored, and/or disposed of at the Property.  On information and belief, Goss-Jewett a/k/a Tri County was the alter ego of its principals, and the corporate entity and principals shared a unity of interest such that a separate corporate personality did not exist; the corporation and its principals formed a single enterprise, and if the privilege of separate existence of the corporate entity were recognized, an inequitable result would follow.

9.  Arthur P. Arns was the President of Goss-Jewett, who exercised influence and substantial control over the operations of the dry-cleaning supply business at the Property, including the operation and abandonment of ASTs containing PCE, as well as the handling of other hazardous substances generated, stored and/or disposed of at the Site.  Arns was also a former tenant of and signed a lease to the Property.

10. Estate of Robert W. Schack, Deceased, is named as a cross-defendant herein to the extent of his estate's assets whether distributed or undistributed and pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies.  Robert W. Schack was an officer, director, and shareholder of Goss-Jewett, who exercised influence and substantial control over the operations of the dry-cleaning supply business at the Property, including the operation of ASTs containing PCE, as well as the handling of other hazardous substances generated, stored and/or disposed of at the Site.  Schack was also a former tenant of and signed a lease to the Property.

/ / /



11. Estate of Benjamin F. Fohrman, Deceased, is named as a cross-defendant herein to the extent of his estate's assets whether distributed or undistributed and pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies. Benjamin F. Fohrman was an officer, director, and shareholder of Goss-Jewett, who exercised influence and substantial control over the operations of the dry cleaning supply business at the Property, including the operation of ASTs containing PCE, as well as the handling of other hazardous substances generated, stored and/or disposed of at the Site.

12. Donald J. George was an officer, director, and shareholder of Tri-County, the predecessor in interest to Goss-Jewett. Donald George exercised influence and substantial control over the operations of the chemical supply business at the Property, including the installation and operation of ASTs containing PCE, as well as the handling of other hazardous substances generated, stored, and/or disposed of at the Site. Donald J. George was also a former tenant of and signed a lease to the Property.

13. Carol L. George was an officer, director, and shareholder of Tri-County, the predecessor in interest to Goss-Jewett. Carol George exercised influence and substantial control over the operations of the chemical supply business at the Property, including the operation of ASTs containing PCE, as well as the handling of other hazardous substances generated, stored, and/or disposed of at the Property. Carol George was also the administrator of her husband's estate, the Estate of Terrence J. George.

14. Darold E. Merritt was an officer, director, and shareholder of Goss-Jewett, who exercised influence and substantial control over the operations of the dry-cleaning supply business at the Property, including the operation and abandonment of ASTs containing PCE, as well as the handling of other hazardous substances generated, stored and/or disposed of at the Site.



15. Estate of Terrence J. George a/k/a Terry George, Deceased, is named as a cross-defendant herein pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies.   Terry George was an officer, director, and shareholder of Tri-County Sales, Inc., the predecessor in interest to Goss-Jewett, who exercised influence and substantial control over the operations of the dry cleaning supply business at the Property, including the installment and operation of ASTs containing PCE, as well as the handling of other hazardous substances generated, stored and/or disposed of at the Site.   Terry George was a former tenant of and signed a lease to the Property.

16. Cross-defendants Roe 1 through 10, inclusive, respectively, are persons, partnerships, corporations, or entities who are, or were, responsible for, or in some way contributed to, contamination found at the Property that is the subject of these crossclaims, or are, or were, responsible for the maintenance, supervision, management, operations, or insurance coverage of the Cross-defendants' facilities or operations on the Property as identified herein, or in some other manner are responsible for the occurrences herein alleged and proximately caused damages to Cross-claimant.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over the subject matter of Cross-claimant's First Cause of Action pursuant to Section 7002(a) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a) and Second and Third Causes of Action pursuant to section 107(a) and section 113(f)(1) and (3)(B) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a), 9613(f)(1), (f)(3)(B). In addition, this Court has jurisdiction over Cross-claimant's Eighth Cause of Action under CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and 28 U.S.C. § 1331.

/ / /



18. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the Fourth through Eighth Causes of Action because those claims are so related to the federal claims in this action that they form the same case or controversy under Article III of the U.S. Constitution.

19. Venue is proper in this Court pursuant to CERCLA § 113(b) because the release and damage occurred in this district. 42 U.S.C. § 9613(b). Furthermore, venue is proper in this Court pursuant to RCRA § 7002(a), 42 U.S.C. § 6972(a), and 28 U.S.C. § 1391(b) because the actual and threatened endangerment, injury and damage at issue are taking place and have taken place in this district.

**NOTICE**

20. Cross-claimant provided notice of the actual and threatened endangerment, injury, and damage alleged herein by mailing notices of endangerment and of intent to file suit pursuant to RCRA § 7002(b)(2)(A), 42 U.S.C. § 6972(b)(2)(A), to the U.S. Environmental Protection Agency ("US-EPA"), the California EPA ("Cal-EPA"), DTSC, and Cross-defendants.

21. Cross-claimant waited at least 90 days after receipt of the notices of endangerment and of intent to file suit by each of the recipients before filing these crossclaims.

22. Cross-claimant has satisfied all jurisdictional prerequisites to filing this action.

**GENERAL ALLEGATIONS**

23. The Property and Site have allegedly been impacted by the presence of PCE and other hazardous substances.

24. PCE is a man-made industrial solvent that has been used in significant quantities in the dry-cleaning industry since the 1940s.

25. PCE and its breakdown products are manmade chemicals and are not naturally occurring.

/ / /



26. Common synonyms for PCE include perc, perchlor, carbon bichloride, carbon dichloride, ethylene tetrachloride, petrochlorothylene, perclene, perk, perchloroethene, 1,1,2,2-tetrachloroethylene, and tetrachloroethene.

27. The International Agency for Research on Cancer has classified PCE as a Group 2A carcinogen, which means that PCE is a probable carcinogen to humans.

28. Because of its mobility in groundwater, its toxicity to humans at low levels, and its density (which causes it to sink below the water table), PCE in the environment can be difficult and expensive to cleanup.

29. Reductive dechlorination of PCE naturally occurs over time under anaerobic conditions present in groundwater as follows: PCE degrades to trichloroethylene ("TCE"), which degrades to dichloroethylene ("DCE"), which degrades to vinyl chloride ("VC"), which degrades to ethene, which finally degrades to carbon dioxide, water, and free chlorine.

30. As a toxic, long-lived, volatile, chlorinated hydrocarbon, and likely carcinogen, PCE as well as many of its degradation products are closely regulated by the state of California and the federal government.

31. The executive and legislative branches of the government of the state of California have determined that the use, handling, and storage of PCE in the dry-cleaning industry should be phased out because of the risk of serious harm to human health and the environment resulting from spills, leaks, disposals, discharges, and other releases of PCE by dry-cleaning businesses, which risk cannot be eliminated by the exercise of utmost care.

32. PCE, TCE, DCE, and VC are "hazardous substances" as that term is defined in federal law, 42 U.S.C. § 9601(14), and state law, Health & Safety Code § 25281(g), and are "hazardous wastes" and "solid wastes" as those terms are defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.

33. All groundwater within the state of California, including the groundwater at the Site and all groundwater that has allegedly been or is threatened with being

adversely impacted by contamination at or emanating from the Property, is "water of the state" pursuant to California Water Code § 13050.

34. Each Cross-defendant caused or contributed to the past or present handling, storage, treatment, transportation, generation, release, or disposal of hazardous substances, hazardous wastes, and/or solid wastes in the environment in, at, and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, because each Cross-defendant released or otherwise discarded hazardous substances, hazardous wastes, and/or solid wastes, or controlled and/or operated the Property and business from which hazardous substances, hazardous wastes, and/or solid wastes were released or otherwise discarded, and failed to prevent or abate the hazardous substance, hazardous waste, and/or solid waste  contamination.

35. Beginning in 1967, Tri-County, the predecessor-in-interest to Goss-Jewett, received, stored, and transported PCE in sealed 55-gallon drums at the Property.

36. In 1969, Donald George, who was President of Tri-County at that time, signed a permit to have a 5,000-gallon AST installed at the Property to store PCE.

37. After the installation of the first AST in 1969, tanker trucks delivered PCE to the Property and transferred it into the AST using a hose and nozzle.

38. Using another hose and nozzle, Tri-County's employees would then transfer the PCE from the AST to the delivery truck tank for transport and delivery to customers.

39. In approximately 1969, Donald George gave his brother, Terry George, 40% of Tri County's stock.

40. Donald George and Terry George operated Tri-County together as partners until Donald George sold the remainder of Tri-County's stock to Terry George on or about December 31, 1974, at which time Terry George became the sole owner of Tri-County.



41. Terry George was President, Chief Financial Officer, and sole director of Tri-County at that time.

42. Terry George had a second AST installed at the Property sometime between 1975 and 1978.

43. The second AST at the Property was used as the first AST was used: tanker trucks delivered PCE to the Property, the PCE was transferred from the tanker trucks into the ASTs, and Tri-County's employees transferred the PCE from the ASTs to the delivery truck tank for transport and delivery to customers.

44. Terry George died in March 1979, and his ex-wife, Carol George, took over Tri County as the executor of his estate and became President of Tri-County.

45. On March 10, 1980, Terry George's estate sold Tri-County's stock to Goss-Jewett.

46. On March 10, 1980, Darold Merritt became President, Treasurer, and a director of Tri-County.

47. On March 10, 1980, Benjamin Fohrman became Secretary and a director of Tri County.

48. In December 1983, Tri-County merged into Goss-Jewett.

49. Robert Schack was President of Goss-Jewett before and after Goss-Jewett's acquisition of and merger with Tri-County.

50. Goss-Jewett continued to operate its chemical supply business at the Property until it vacated the Property on May 4, 1991.

51. The practice of having PCE delivered to the Property by tanker truck, transferring the PCE from those trucks to the ASTs at the Property, transferring the PCE from the ASTs to the delivery truck tanks, and transporting and delivering the PCE to customers continued throughout Tri-County's and later Goss-Jewett's operation of the chemical supply business at the Property from 1969 to 1991.

52. At various times between 1967 and 1991 Cross-defendants intentionally, negligently, suddenly, and accidentally caused or contributed to the presence of



-10-

contaminants in the environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, at the Site. Once released into the environment, these contaminants have continued to spread and migrate within the environment at the Site, but Cross-defendants have failed to abate this contamination.

53. Cross-defendants operated the chemical supply business at the time PCE was spilled, leaked, discarded, discharged, disposed of, or otherwise released at the Property during the delivery of PCE.

54. Cross-defendants operated the chemical supply business at the time PCE was spilled, leaked, discarded, discharged, disposed of, or otherwise released at the Property during the transfer of PCE.

55. Cross-defendants operated the chemical supply business at the time PCE was spilled, leaked, discarded, discharged, disposed of, or otherwise released at the Property during the loading or unloading of a delivery truck.

56. Cross-defendants operated the chemical supply business at the time of a spill, discharge, dispersal, release, leak, or escape of PCE caused by a drum, hose, nozzle, or tank being upset, overturned, or damaged during the loading or unloading of a delivery truck at the Property.

57. Cross-defendants operated the chemical supply business at the Property without a hazardous materials business plan or proper hazardous materials training, as required by applicable federal, state, or local laws.

58. In 1991, Goss-Jewett, through President Arthur Arns, had the two ASTs removed from the Property.

59. Pictures taken as the ASTs were being removed revealed the poor condition of the ASTs and of the concrete slab upon which they sat.

60. The ASTs had not been well-maintained and were rusty, corroded, and deformed, with cracked or fractured edges at the bottoms of the ASTs.

61. The concrete slab below the ASTs had also not been well-maintained and



was stained, caved in, and cracked.

62. Subsequent environmental investigations revealed that the Property was highly contaminated with PCE and that the contamination had migrated and was continuing to migrate east to Mission Creek and south across Highway 101.

63. Regulatory enforcement and litigation ensued, but after almost 27 years, the contamination in the soil, soil vapor, indoor air, surface water, and groundwater at the Site continues to spread and continues to threaten public health and the environment.

64. Cross-defendants have known for over two decades about the contamination, the serious threat that the contamination poses to public health and the environment, that the contamination needs to be investigated and cleaned up, and that they are responsible for such investigation and cleanup. Despite such knowledge, Cross-defendants have failed and refused to perform or fund such investigation and cleanup.

65. Under the "continuous accrual" theory, "When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." Here, Cross-defendants' liability for the contamination at the Site arises on a recurring basis as the contamination continues to spread and cause additional harm and damage.

66. As a result of Cross-defendants' releases of contaminants at the Property, Cross-claimant has incurred and paid more than $500,000 in response costs and will continue to incur response costs in order to address and respond to the contamination at its Property, and has suffered and will continue to suffer substantial damages as a direct and proximate result of the contamination.

67. Based on currently available data, experts estimate that it will cost $10,985,000 to conduct the necessary investigations and remediation to clean up the contamination at the Site in a manner consistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300.



# FIRST CAUSE OF ACTION

## RCRA § 7002(a)(1)(B)

### Against All Cross-Defendants

68. Cross-claimant realleges and incorporates by reference the allegations set forth above in paragraphs 1–67, inclusive, as though set forth in full herein.

69. RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), under which Cross-claimant brings this action, is RCRA's citizen enforcement provision.

70. Any person may bring a lawsuit under RCRA § 7002(a)(1)(B) when: (a) a "solid or hazardous waste" (b) "may present an imminent and substantial endangerment to health or the environment" and (c) the defendant falls within one of the categories of entities that Congress declared liable for taking abatement action or "such other action as [this Court determines] may be necessary."

71. The persons declared liable by Congress for abatement of potential endangerments under RCRA § 7002(a)(1)(B) are persons who contributed to "past or present handling, storage, treatment, transportation, or disposal" of the "hazardous wastes" and/or "solid wastes" at issue, including "any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility."

72. Under RCRA § 1004(27), 42 U.S.C. § 6903(27), "solid waste" is "discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities."  The term, however, does not include "solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under Section 1342 of Title 33. . . ."

73. None of the discharges from any of the Cross-defendants is solid or dissolved material in domestic sewage, or solid or dissolved material in irrigation return flows or industrial discharges which are point sources subject to permits



1 under 33 U.S.C. § 1342.

2    74. Under RCRA § 1004(5), 42 U.S.C. § 6903(5), "hazardous waste" is "a
3 solid waste, or combination of solid wastes, which because of its quantity,
4 concentration, or physical, chemical, or infectious characteristics may . . . pose a
5 substantial present or potential hazard to human health or the environment when
6 improperly treated, stored, transported or disposed of, or otherwise managed."

7    75. Under RCRA § 1004(3), 42 U.S.C. § 6903(3), "disposal" means "the
8 discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid
9 waste or hazardous waste into or on any land or water so that such solid waste or
10 hazardous waste or any constituent thereof may enter the environment or be emitted
11 into the air or discharged into any waters, including ground waters."

12    76. Pursuant to authority under RCRA § 3001, 42 U.S.C. § 6921, the
13 Administrator of the U.S. E.P.A. promulgated regulations at 40 C.F.R., Part 261,
14 listing or identifying certain hazardous wastes that the Administrator elects to
15 subject to the strict regulatory program established in Subtitle III of RCRA, 42
16 U.S.C. §§ 6921–6931.  Pursuant to RCRA § 7006(a)(1), 42 U.S.C. § 6976(a)(1),
17 any RCRA hazardous waste finally so "listed or identified" by the Administrator
18 following formal, "notice and comment" rule-making as being subject to the
19 hazardous waste regulatory program set forth in Subtitle III of RCRA, has been
20 finally and conclusively determined for all purposes of any RCRA enforcement
21 action, including the instant one, to be a "hazardous waste" as defined by RCRA
22 § 1004(5). However, for purposes of RCRA § 7002(a)(1)(B) citizen suits,
23 substances also qualify as "hazardous wastes" and "solid wastes" when the above
24 statutory definitions (*i.e.,* those set forth in RCRA §§ 1004(5) and (27)) are met.  40
25 C.F.R. § 261.1(b)(2).

26    77. Cross-claimant and each Cross-defendant are a "person" within the
27 meaning of RCRA § 1004(15), 42 U.S.C. § 6903(15).

28 / / /



-14-

78. PCE, its breakdown chemicals, and other chemicals released into the environment by Cross-defendants are "solid wastes" because they are discarded material resulting from commercial operations.

79. The PCE, its breakdown chemicals, and other chemicals released into the environment by Cross-defendants are "hazardous wastes" because of their concentrations, or physical or chemical characteristics, they pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of, or otherwise managed.

80. Each of the Cross-defendants caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of "solid wastes," "hazardous wastes," "wastes," and "hazardous substances" in the environment in, at, and around the Site because each Cross-defendant released or otherwise discarded PCE or controlled the property from which PCE and other chemicals were released or otherwise discarded, but failed to prevent or abate this "solid waste," "hazardous waste," "waste," and "hazardous substance" contamination.

81. The presence of PCE at and around the Site presents or may present an imminent and substantial endangerment to human health or the environment.

82. On July 17, 2012, DTSC issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order which concluded (1) "The actual and threatened release of hazardous substances at the Site may present an imminent and substantial endangerment to the public health or welfare or to the environment" and (2) "Response action is necessary to abate a public nuisance and/or to protect and preserve the public health."

83. On January 30, 2014, DTSC sent a letter to Plaintiff regarding new indoor air data showing PCE at "concentrations that may pose unacceptable cancer risks, as well as acute and chronic non-cancer hazards to workers at the site." Accordingly, DTSC ordered Plaintiff to "Immediately take all appropriate action to prevent, abate, or minimize the exposure to workers . . . These actions may include,

but are not limited to, (a) removal of workers from the site, (b) placement of an indoor air treatment system, and then (c) remediation of the subsurface for VOC contamination."

84. The Cross-defendants' liability for such relief as the Court may determine appropriate and necessary under RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), is strict, joint and several.

85. Cross-claimant provided notice of the endangerment to the US-EPA, Cal-EPA, DTSC, and Cross-defendants, and waited at least 90 days after receipt of such notice by such recipients before filing this action, as required by RCRA § 7002(b)(2)(A), 42 U.S.C. § 6972(b)(2)(A).

86. Neither the US-EPA nor the Cal-EPA has commenced or is diligently prosecuting an action under RCRA or CERCLA related to the Site.

87. Cross-claimant will give the U.S. Attorney General and the EPA Administrator notice of the commencement of this action, as required by RCRA § 7002(b)(2)(F), 42 U.S.C. § 6972(b)(2)(F).

88. Cross-claimant is entitled to relief under RCRA § 7002(a), 42 U.S.C. § 6972(a), restraining the Cross-defendants and requiring each of them, jointly and severally, to fully, promptly, and appropriately investigate and abate all actual and potential endangerments arising from the released solid wastes and hazardous wastes at and emanating from the Site.

## SECOND CAUSE OF ACTION

## CERCLA § 113(f)(1) and (f)(3)(B)

### Against All Cross-Defendants

89. Cross-claimant realleges and incorporates by reference the allegations set forth above in paragraphs 1–88, inclusive, as though set forth in full herein.

90. Cross-claimant did not cause or contribute to the environmental contamination at the Site and denies that it is liable for costs incurred or to be incurred as the result of the alleged release or threatened release of hazardous

substances at the Site. However, in the interest of an expeditious cleanup and acting in good faith, Cross-claimant has incurred and continues to incur response costs to investigate, remove, and remediate the environmental contamination at the Property consistent with the NCP.

91. The Property and the Site are each a "facility" as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

92. The premises, ASTs, hoses, nozzles, pipes, pipelines, equipment, and installations that Cross-defendants operated at the Property also collectively constitute a "facility" (the "PCE distribution facility").

93. A "release" or threatened "release" of PCE, a "hazardous substance," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred at the Property and the Site, and from the PCE distribution facility.

94. These releases and/or threatened releases caused Cross-claimant to incur response costs that were necessary and consistent with the NCP.

95. Each Cross-defendant was an owner and/or operator of the PCE distribution facility during times when PCE was disposed of at and/or from that facility and to the Property and the Site.

96. Cross-defendants are liable to Cross-claimant for indemnification or contribution under CERCLA § 113(f)(1) and (f)(3)(B), 42 U.S.C. § 9613(f), for some or all response costs that Cross-claimant has incurred and any that it may incur in the future as the result of the contamination at the Site.

### THIRD CAUSE OF ACTION

### CERCLA § 107(a)

### Against All Cross-Defendants

97. Cross-claimant realleges and incorporates by reference the allegations set forth above in paragraphs 1–96, inclusive, as though set forth in full herein.

98. Cross-defendants used, processed, produced, stored, treated, excavated, and/or generated hazardous substances at the Property.



-17-

99.   Cross-defendants caused or contributed to the spilling, leaking, disposal, and release of hazardous substances during their ownership or operation at the Property thereby creating a condition of hazardous substance contamination at the Site.

100. As a result of the condition of hazardous substance contamination at the Site, Cross-claimant undertook various response actions and has incurred various response costs in connection with the hazardous substances at the Site.

101. Cross-defendants transported or arranged for transport of hazardous substances which it owned or possessed to the Property, and stored, treated, and disposed of hazardous substances at the Property, and otherwise owned, handled, operated the Property during the time that hazardous substances were disposed of at the Site.  Cross-defendants are thereby jointly and severally liable under CERCLA § 107(a), 42 U.S.C. § 9607(a).

102. The Property and the Site are each a "facility" as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

103. The premises, ASTs, hoses, nozzles, pipes, pipelines, equipment, and installations that Cross-defendants operated at the Property also collectively constitute a "facility" (the "PCE distribution facility").

104. A "release" or threatened release of a "hazardous substance," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred at the Site.

105. Cross-defendant did not cause or contribute to the environmental contamination at the Site and denies that it is liable for costs incurred as the result of the alleged release or threatened release of hazardous substances at the Site. However, in the interest of an expeditious cleanup and acting in good faith, Cross-defendant has incurred and will continue to incur response costs to investigate, remove, and remediate the environmental contamination at the Site consistent with the NCP.

106. Cross-defendants are strictly liable to Cross-complainant for the costs referred to above and for interest on those costs pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

### FOURTH CAUSE OF ACTION

### HSAA § 25363(d)

### Against All Cross-Defendants

107. Cross-claimant realleges and incorporates by reference the allegations set forth above in paragraphs 1–106, inclusive, as though set forth in full herein.

108. The Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code § 25300 *et seq.* ("HSAA"), was enacted to encourage the expedient cleanup of "hazardous substances" that have been released into the environment. In furthering this goal, the California Legislature included the statutory right of contribution or indemnity for those parties who clean up contaminated properties from those parties who are responsible for the contamination.

109. Section 25363(d) of HSAA provides that "[a]ny person who has incurred removal or remedial action costs in accordance with [HSAA] or the federal [CERCLA, 42 U.S.C. § 9601 *et seq.*] may seek contribution or indemnity from any person who is liable pursuant to [HSAA]."

110. A "liable person" is defined in section 25323.5(a) of HSAA as "those persons described in section 107(a) of [CERCLA] (42 U.S.C. Sec. 9607(a))."

111. "Those persons described in section 107(a)" of CERCLA include the owner and operator of a facility, any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed, and any person who arranged for disposal or treatment of hazardous substances for transport to a disposal facility. 42 U.S.C. § 9607(a).

112. Cross-claimant is a "person" within the meaning of section 25319 of the Health & Safety Code.



-19-

113. Each Cross-defendant is a "liable person" within the meaning of section 25323(a) of the Health & Safety Code.

114. As a direct and proximate result of Cross-defendants' actions that caused or contributed to releases of hazardous substances at the Site, Cross-claimant has incurred and will continue to incur costs for removal or remedial actions taken in accordance with the HSAA.  These include, but are not limited to, costs incurred for investigation, testing, site assessment, monitoring and remediation of the contamination.

115. Cross-claimant will promptly give DTSC notice of the filing of these crossclaims, as required by section 25363(d) of the Health & Safety Code.

116. Accordingly, under strict liability imposed by the HSAA, Cross-claimant is entitled to contribution or indemnity from Cross-defendants for the costs of such removal or remedial actions.

**FIFTH CAUSE OF ACTION**

**Public Nuisance**

**Against All Cross-Defendants**

117. Cross-claimant realleges and incorporates by reference the allegations set forth above in paragraphs 1–116, inclusive, as though set forth in full herein.

118. Section 3479 of the Civil Code defines a "nuisance," in relevant part, as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of the property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal or basin."

119. Section 3480 of the Civil Code defines a "public nuisance" as: "[o]ne which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."



120. Cross-defendants caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of hazardous substances, hazardous wastes, and/or solid wastes in the environment in, at, and around the Site because each Cross-defendant released or otherwise discarded PCE from their operations or controlled the property from which PCE was released or otherwise discarded, but failed to prevent or abate this hazardous substances, hazardous wastes, and/or solid wastes contamination.

121. Cross-defendants' acts and omissions in causing and contributing to releases of hazardous substances, hazardous wastes, and/or solid wastes in, at, and around the Site create a condition that is injurious to health, is indecent or offensive to the senses, and is an obstruction to the free use of a "basin," namely the aquifer underlying the Site.

122. The public nuisance condition and related endangerments to health and the environment arising from released hazardous substances in, at, around the Site affects the entire surrounding community because it interferes with the free use and enjoyment of the groundwater and there is a public health risk from the vapors intruding peoples' homes and places of work.

123. Cross-defendants have caused, created, maintained, contributed to, and neglected to abate a "public nuisance," as defined in Civil Code §§ 3479 and 3480, namely the potential endangerments to health and the environment created by the hazardous substances, hazardous wastes, and/or solid wastes contamination at the Site.

124. The release or disposal of PCE, as alleged herein, constitutes a nuisance as the release or disposal is a violation of California Water Code sections 13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and 117555, California Fish and Game Code section 5650, and Civil Code sections 3479–3480, the purpose of which are to set a standard of care or conduct to protect the public and the environment from the type of improper activities engaged



in by Cross-defendants. Therefore, such improper activities and violations constitute a nuisance *per se*.

125. Cross-claimant has suffered special injury and damages as a direct and proximate result of the contamination at and emanating from the Site as the public nuisance has damaged its Property. To that end, Cross-defendants have also failed to abate a private nuisance *per se*.

126. Cross-claimant has demanded that Cross-defendants abate the continuing nuisance complained of, and hereby reiterate that demand.

127. Cross-defendants are strictly and jointly and severally liable for abatement of, and damages caused to Cross-claimant by, the continuing public nuisance.

128. Cross-claimant is thus entitled to an award of damages against Cross-defendants and to injunctive relief against Cross-defendants requiring each of them, jointly and severally, promptly and competently to take such action as may be necessary to abate the continuing public and private nuisance and for reimbursing Cross-complainant for all response costs incurred and to be incurred at the Site.

## SIXTH CAUSE OF ACTION

### Private Nuisance

### Against All Cross-Defendants

129. Cross-claimant realleges and incorporates by reference the allegations set forth above in paragraphs 1–128, inclusive, as though set forth in full herein.

130. The contamination of the Site constitutes a "nuisance" as that term is defined by Civil Code § 3479.

131. Each Cross-defendant created or assisted in creating or maintaining the "nuisance" at the Site.

132. Neither Cross-claimant nor its predecessors in title, the Goldbergs, consented to the Cross-defendants' conduct in creating, assisting in the creation of, or maintaining the "nuisance" at the Site.



133. The nuisance at the Site is substantial in the sense that an ordinary person would be reasonably annoyed or disturbed by the nuisance.

134. Cross-claimant has been and continues to be harmed by the nuisance at the Site.

135. Each Cross-defendant's conduct in creating or assisting in the creation of or in maintaining the "nuisance" at the Site was a substantial factor in causing, and was an actual and proximate cause of, Cross-claimant's harm.

136. The nuisance at the Site is unreasonable in the sense that the seriousness of the harm outweighs the public benefit of Cross-defendants' conduct.

137. Cross-claimant owns the Property.

138. The nuisance at the Site interferes with Cross-claimant's use or enjoyment of its Property.

139. The nuisance at the Site is an abatable, continuing nuisance.

140. Cross-claimant is thus entitled to an award of damages against Cross-defendants on its continuing private nuisance claim, according to proof.

### SEVENTH CAUSE OF ACTION

### Trespass

### Against All Cross-Defendants

141. Cross-claimant realleges and incorporates by reference the allegations set forth above in paragraphs 1–140, inclusive, as though set forth in full herein.

142. Cross-claimant owns the Property.

143. On or about April 1968, and continuing until May 1991, Cross-defendants caused or allowed hazardous substances, hazardous wastes, and/or solid wastes to enter the Property without the consent or knowledge of Cross-claimant or its predecessors in title.

144. Cross-defendants knew or should have known that the release of hazardous substances, hazardous wastes, and/or solid wastes would contaminate the soil and groundwater at, around, and beneath the Site.



-23-

145. Cross-defendants have failed to clean up the contamination and, as a result, the hazardous substances, hazardous wastes, and/or solid wastes have been detected at, around, and beneath the Site.

146. Unless Cross-defendants are ordered immediately to clean up the contamination of the soil, soil vapor, indoor air, and groundwater, it will be necessary for Cross-claimant to commence many successive actions against Cross-defendants to secure compensation for the damages sustained, thus requiring a multiplicity of suits.

147. Cross-claimant has no adequate remedy at law for the injuries suffered by reason of the acts, omissions, and conduct of Cross-defendants and by reason of the trespass committed by them, and this Court should grant injunctive relief to compel Cross-defendants immediately to clean up the contamination of the soil, soil vapor, indoor air, and groundwater at and around the Site.

148. As a direct and proximate result of the acts, omissions, and conduct of Defendants and of the continuing trespass caused thereby, Cross-claimant has suffered and continue to suffer damages to its Property to such an extent that repairs were and continue to be necessary to restore the land, by conducting site assessment and site mitigation of the contamination, including soil removal, installation of wells, and additional works which are still necessary to complete the restoration of the property. Because the highest levels of contamination are in the area of the former ASTs in the front of the building, a portion of the building needed to be demolished and replaced in order to perform a time critical removal action and to conduct other interim remedial measures. The portion of the building that was saved required a vapor barrier and sub-slap depressurization system to prevent PCE from intruding into the indoor space from the soil and groundwater below as well as other measures to increase ventilation.

149. As a further proximate result of Cross-defendants' entry onto the Property and continuing trespass upon the land, by virtue of the contamination of

the soil, soil vapor, indoor air, and groundwater, Cross-claimant was unable to fully use its Property for the purpose in which it was intended, and to receive all of the income from its Property which it otherwise would have been able to receive.

150. Cross-claimant has also been damaged in that it has been unable to obtain financing on the Property because of the contamination.

151. Cross-defendants' conduct caused and maintained a continuing trespass at the Property and that trespass will continue to persist at the Property until such time as Cross-defendants are required to remove the hazardous substances, hazardous wastes, and/or solid wastes from the Property.

## EIGHTH CAUSE OF ACTION

### Declaratory Relief

### Against All Cross-Defendants

152. Cross-claimant realleges and incorporates by reference the allegations set forth above in paragraphs 1–151, inclusive, as though set forth in full herein.

153. In response to the third-party claims filed against it, Cross-claimant has filed these amended crossclaims, which entitle it to cost recovery or indemnity or contribution from any other person who is liable or potentially liable under CERCLA or HSAA for any amount for which Cross-claimant is held responsible in responding to the presence of hazardous substances at the Site, and to the actual or threatened release of such hazardous substances.

154. Accordingly, an actual legal controversy exists between Cross-claimant, on the one hand, and Cross-defendants, on the other hand, in that Cross-claimant contends that it is entitled to cost recovery or indemnification or contribution from Cross-defendants for the costs it has incurred and any costs it may incur in the future in responding to the contamination at the Site, and Cross-claimant is informed and believes that Cross-defendants contend otherwise.

155. Cross-claimant desires and is entitled to a declaration of the parties' respective rights and duties pursuant to 28 U.S.C. § 2201, *et seq.*, CERCLA § 113



(f) and (g), 42 U.S.C. § 9613 (f) and (g), and applicable state law.  No adequate or speedy remedy exists for Cross-claimant in the absence of such a judicial declaration, which is necessary and appropriate at this time, respecting the parties' liability for past and future costs, and other penalties or damages imposed on any party in connection with the Site.

## PRAYER FOR RELIEF

WHEREFORE, Cross-claimant respectfully requests that judgment be entered in its favor for the following:

1.  For an injunction ordering Cross-defendants to abate the actual or threatened endangerment at the Site;

2.  For an injunction ordering Cross-defendants to abate the continuing public and private nuisance at the Site;

3.  For an injunction ordering Cross-defendants to abate the continuing trespass at the Property;

4.  For an award of damages against Cross-defendants for the harm they caused to Cross-claimant by the continuing nuisance and trespass;

5.  For cost recovery under CERCLA, according to proof;

6.  For indemnity or contribution under CERCLA, according to proof;

7.  For indemnity or contribution under the HSAA, according to proof;

8.  For a judicial declaration under federal and state law that Cross-claimant is not liable, and that Cross-defendants are liable for each of their equitable shares of all present and future response costs and other damages incurred in connection with the Site, according to proof;

9.  For an award of Cross-claimant's costs of litigation, including attorneys' fees and expert witness fees, pursuant to RCRA § 7002(e), 42 U.S.C. § 6972(e), and California Code of Civil Procedure § 1021.5;

10. For all costs of suit herein;

11. For prejudgment and post-judgment interest; and



1     12. For such other and further relief as this Court deems just and proper.

2  **JURY TRIAL DEMAND**

3  Cross-claimant hereby demands trial by jury of any and all issues so triable.

4  Respectfully submitted,

5  Dated: November 27, 2019       PALADIN LAW GROUP® LLP

6                   By:  /s/  *Bret A. Stone*

7                       Bret A. Stone

8                       Counsel for Cross-Claimant and Third-Party Defendant 220 W. Gutierrez, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

