# .ITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF BETTY GOLDBERG, et al., <br>     Plaintiffs, <br><br> v. <br><br> GOSS-JEWETT COMPANY, INC., et al., <br>     Defendants. <br><br> AND RELATED CROSS ACTIONS AND THIRD PARTY ACTIONS | EDCV 14-1872 DSF (AFMx) <br><br> Order GRANTING IN PART and DENYING IN PART Intervenors' and Certain Defendants' Motion for Summary Judgment; Order GRANTING IN PART and DENYING IN PART Third Party Defendant 220 W. Gutierrez, LLC's Motion for Summary Judgment (Dkt. No. 713, 723) |

    Certain intervening insurance companies (Intervenors) and Individual Defendants[1] move for summary judgment in this long-standing environmental case along with Third Party Defendant and current owner of the afflicted property, 220 W. Gutierrez, LLC (220

---

[1] The Court will generally refer to the Estate Defendants and the remaining living individual Defendants collectively as the Individual Defendants except where the distinction is relevant. The Court will also generally refer to the Intervenors and the Individual Defendants collectively as Defendants for convenience. The Court will also sometimes refer to the Estate of Betty Goldberg and 220 W. Gutierrez, LLC collectively as Plaintiffs for convenience when their arguments are aligned.

LLC).  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.

## I. Background and Basic Facts

In the interest of brevity, the Court will not recount a complete factual and procedural history of this case or of the property located at 220 W. Gutierrez Street in Santa Barbara, California (the Property).[2] The main outline of the facts can be quickly recounted with details expanded on as they are relevant to the analysis.

The Property was long used as the location for a dry cleaning supply distribution business.  One of the chemicals sold from the Property was perchloroethylene (PCE).  The soil and groundwater under the Property and under some neighboring properties is now heavily contaminated with PCE.  Plaintiff Estate of Betty Goldberg is the estate of a former owner of the Property.  In the 1960s, Betty Goldberg, along with her husband, Al Goldberg, operated a dry cleaning supply business on the Property under the name "Tri-County Sales" and later incorporated as Tri-County Sales, Inc.  In 1968, they sold the business but retained ownership of the underlying real property.  Tri-County was soon sold to Defendant Donald George who sold his interest to his brother Terrence George in 1974.

After Terrence George died in 1979, Tri-County was sold to a larger dry cleaning supply company, Goss-Jewett Company, Inc.  Tri-County continued to operate at the Property as a separate legal entity until 1983 when it was merged into Goss-Jewett.  Defendants Benjamin Fohrman (deceased) and Darold Merritt were directors of Tri-County during the time it was owned by Goss-Jewett.  Defendant Robert W. Schack (deceased) was president, a director, and a shareholder of Goss-Jewett in the relevant period.  In 1990, Defendant Arthur Arns bought

---

[2] The Court uses 220 LLC's definitions of the "Property" as the particular real estate parcel at 220 W. Gutierrez Street and the "Site" as the broader area of contamination on and around the Property.  See 220 LLC Am. Crossclaim (Dkt. No. 660) ¶ 2.

2

a majority interest in Goss-Jewett and became its president. In 1991, Goss-Jewett ceased operations at the Property and by 1992 was effectively out of business entirely, with its assets sold for the benefit of its creditors. The entire company was formally suspended by the State of California in 2001 its last agent for service of process resigned in 2009.

The business at the Property originally distributed PCE largely in closed 55-gallon drums, although there is evidence that PCE was occasionally moved from the drums to smaller containers for small purchasers. In March 1969, Tri-County had a large above ground PCE storage tank installed on the Property.[3] The tank was filled with PCE from large tanker trucks that parked on the public street adjacent to the Property. PCE was then later put into small tanks on trucks for distribution to Tri-County or Goss-Jewett's customers. Eventually a second tank was added to the Property sometime in the 1970s. The tanks remained on the Property until they were removed by Goss-Jewett on its closing of its location at the Property in 1991.

220 LLC is the current owner of the real property that encompasses the Property. As part of its acquisition of the Property from the Estate of Betty Goldberg, 220 LLC entered into a Prospective Purchaser Agreement (PPA) with the California Department of Toxic Substances Control (DTSC). The PPA requires 220 LLC to undertake certain specified remediation efforts at the Site. In exchange, the PPA provides that DTSC will not take further action against 220 LLC and that other entities are barred from seeking contribution from 220 LLC relating to the contamination at the Site. Otherwise, 220 LLC paid no money for the property.

The procedural history of this litigation is long and cumbersome, but, as relevant here, Plaintiff sued Goss-Jewett and a number of individuals associated with Goss-Jewett or Tri-County or their estates. Various insurers intervened in the case (Intervenors) to defend their

---

[3] There is a separate dispute - not directly relevant here - about who technically owned the tanks.

interests as potential payors of various policies issued to Tri-County and Goss-Jewett in the period between 1978 and 1986. The Intervenors and Individual Defendants now move for summary judgment on several issues. 220 LLC also moves for summary judgment regarding liability of the Defendants and asserts that it is protected by various statutory bars, including a contribution bar pursuant to the DTSC settlement.

## II. Legal Standard

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(c)(1). A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Id. at 250-51. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a

4

verdict . . . ." Id. at 252.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992).  Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" Fresno Motors v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014).  Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (internal quotation marks and ellipsis omitted).

### III. Intervenors' and Individual Defendants' Motion

#### A. There is No Evidence to Support Direct Liability Claims Against the Individual Defendants

The Court previously ruled in favor of Individual Defendant Arthur Arns regarding Arns's liability as an "operator" of a facility on the Property.  Based on an analysis and application of United States v. Bestfoods, 524 U.S. 51 (1998), the Court stated that "Arns can be liable as an operator only if (1) the corporate veil can be pierced or (2) if he personally took part in the operation of the facility on the Property." June 4, 2019 Arns S.J. Order (Dkt. 573) at 6.

The same analysis applies here with respect to the remaining Individual Defendants, and the evidence of their individual liability is no stronger than it was for Arns.  Plaintiffs and 220 LLC wish to impose liability on directors, officers, and shareholders solely because they theoretically had the ability to control all aspects of Goss-Jewett or Tri-County's operations, including their operations with respect to PCE at the Property. But, as stated in the Arns order, the logic of Bestfoods indicates that a CERCLA "operator" has to actively participate in, and directly exercise control over, the operations of the facility itself, not just the company more generally even if a high-ranking officer

theoretically has the authority to take control over all aspect of the company, including the ones related to pollution.

As with Arns, the evidence of the other Individual Defendants' "operation" of the facility at the Property is that they occasionally visited, had some general level of control over business operations, and theoretically could have changed the procedures for handling PCE at the Property. There is no evidence that any of the Individual Defendants controlled the day-to-day operations at the Property or would have been even remotely directly involved with any PCE releases at the Property.

The strongest evidence of individual involvement, such that it is, is against Carol George, Terrence George's widow who briefly controlled Tri-County as Executor of Terrence George's estate, and Darold Merritt of Goss-Jewett. But this evidence is only that Carol George tried to get an understanding of how the business operated, see, e.g., Stone Opp. Decl. Ex. 12 (Hanacek Decl.) at 137:13-22, and Merritt did a ride-along with a problem Tri-County employee in the attempt to bring him up to the work standards of Goss-Jewett, see Stone Opp. Decl. Ex. 13 at 67-68. Notably, that ride-along does not appear to have specifically involved any PCE handling concerns and seems to have been about the driver's time management issues. Merritt was involved in integrating Tri-County into Goss-Jewett and visited Santa Barbara on a weekly basis. In fact, Merritt testified that he spent two or three days a week in Santa Barbara for the first three years Goss-Jewett owned the facility. Johnson Decl. Ex. I at 34:12-22. But there was also a separate facility manager in Santa Barbara who was responsible for the day-to-day operation of the facility. Id. at 32-33. Even if Merritt were physically present more often than the other Individual Defendants, there is still no evidence that he "operated" the facility.

With regard to the state law claims, Plaintiffs and 220 LLC correctly note that corporate officers and directors can be held liable for their own torts even if those torts occur in the course of corporate duties. But, as discussed above, the problem is that there is no evidence that

6

any of the Individual Defendants ever personally committed any of the torts at issue.

## B. There is No Evidence to Support Alter Ego Liability Against the Individual Defendants

The Court denied Arthur Arns's motion for summary judgment with respect to the alter ego allegations because there was some evidence that Arns had not maintained separation of his personal dealings from the company's. No such evidence exists with respect to the moving Individual Defendants.[4]

The only concrete evidence at all cited to show that any of the moving Defendants failed to respect corporate formalities is that Donald George signed an assignment of the lease on the Property in 1968 apparently in his own name and not in the name of Tri-County Sales. This piece of evidence is close to meaningless because there is nothing in the record to establish that George did not actually lease the Property himself and sublease it to Tri-County.[5] And even if that was not the structure of the relationship, a single incident of sloppy lease documentation over the course of years of business is not sufficient to support an alter ego finding. Otherwise, the evidence cited is that Tri-County was a small family owned enterprise where the same people were owners, directors, and officers. There is nothing uncommon about this arrangement and it is not the same as not observing corporate formalities. There is no alter ego evidence offered at all against the Goss-Jewett affiliated Individual Defendants, and all available

---

[4] Plaintiff and 220 LLC repeatedly state that Tri-County or Goss-Jewett "did not follow corporate formalities" while a particular Individual Defendant was in charge, but they provide no citation for this assertion and a review of their Separate Statement of Material Facts and supporting evidence shows that they have no evidence to support the assertion.

[5] As, for example, 220 LLC currently owns the Property and leases it to Paladin Law Group while maintaining at least some principals in common.

7

evidence shows that it was a reasonably sophisticated medium-sized private corporation where the corporate form was respected.[6]

## C. The RCRA Claims Against Goss-Jewett and the Estate Defendants Fail for Lack of Statutory Notice

A prerequisite for a RCRA claim is that prelitigation notice be given to the prospective defendants. 42 U.S.C. § 6972(b)(2)(A). Defendants claim that no notice was given by 220 LLC. The Court agrees.

None of the Estate Defendants have personal representatives. 220 LLC purports to have given notice by sending notice to the alleged next-of-kin of the deceased individuals. But someone who is merely purported to be next-of-kin to a deceased person is not the representative of that person's estate under California law unless appointed by a probate court. See Cal. Prob. Code § 8400(a) ("A person has no power to administer the estate until the person is appointed personal representative and the appointment becomes effective."); § 9600 ("The personal representative has the management and control of the estate . . . ."); § 9820 (personal representative has power to "[d]efend actions and proceedings against the decedent, the personal representative, or the estate."). Simply serving whoever seems to be closest to a proper person to be served is not providing legal notice and not knowing what else to do is not an excuse or justification that would allow 220 LLC to evade the notice requirement.

The situation with Goss-Jewett is similar. Goss-Jewett is technically a suspended California corporation, but it has been suspended since 2001 and is, as a practical matter, defunct. There are no current officers or directors. The former agent for service of process resigned that position in 2009. Facing this, 220 LLC proceeded to serve an attorney for the Intervenors and Darold Merritt, who hasn't been

---

[6] The purported Goss-Jewett alter-ego evidence is simply corporate officers doing corporate officer things like signing leases on behalf of the corporation and driving company cars. None of this is evidence of a failure to respect the corporate form.

8

associated with Goss-Jewett for almost 30 years. Neither of them are representatives of Goss-Jewett and service of notice on them is not notice to Goss-Jewett. 220 LLC again pleads that this is all they knew to do, but, again, that does not excuse the failure to provide the statutorily required notice.

RCRA provides for injunctive relief only, not monetary damages. The Court is sympathetic to the argument that deceased individuals and suspended corporations cannot generally under California law be mandated to act by court injunction because they lack the legal capacity to act. However, the Court need not reach this issue because the required RCRA notice was not given.[7]

## D.  Defendants Have Not Established That 220 LLC's Contribution Claims Are Barred by the Statute of Limitations

Defendants argue that 220 LLC's CERCLA and HSAA contribution claims are barred by the relevant statutes of limitations. They fail to meet their burden for several reasons.

It is unclear when a CERCLA claim for contribution accrues when a responsible party reaches an administrative settlement with a state agency. 42 U.S.C. § 9613(g)(3) sets a specific accrual point for judicially approved settlements and certain federal administrative settlements under 42 U.S.C. §§ 9622(g) and 9622(h) but is silent with respect to state administrative settlements like the one 220 LLC reached with the DTSC. Defendants assume § 9613(g)(3) applies with equal force to this kind of state administrative settlement, but they provide no reason why the Court should write terms into what is a fairly specific statutory provision that explicitly lists certain kinds of settlements and not others.

---

[7] This also reduces any purported "absurdity" of the Court's ruling as to notice. If a proper representative of a suspended corporation or an estate cannot even be found so that notice can be served, it is difficult to understand how the corporation or estate could be compelled to act.

9

Defendants rely on a Ninth Circuit statement that "[w]hen a person resolves its liability to the United States or a State through an administrative or judicially approved settlement, a right to assert a contribution claim against other PRPs also accrues." See ASARCO, LLC v. Celanese Chem. Co., 792 F.3d 1203, 1210 (9th Cir. 2015). ASARCO does include that quote, but ASARCO was not about a state administrative settlement, making a broad interpretation dicta. In addition, the ASARCO quote is accurate in the sense that judicially approved settlements with a state (or the United States) trigger accrual and that certain federal administrative settlements also trigger accrual. Given that, it is not completely clear that the ASARCO panel even intended to suggest that all administrative settlements caused a contribution claim to accrue or just the ones specified in § 9613(g)(3). But, as noted, such a claim would have been dicta, and there is nothing to suggest that the Ninth Circuit intended to resolve this potentially complicated matter of statutory interpretation.

In the absence of specific statutory guidance, a contribution cause of action could conceivably accrue when the settlement is entered, when the settlement becomes final, when the settling party actually expends recoverable costs, when the settling party finishes the cleanup efforts, or possibly some other relevant point. Defendants make no attempt to argue for their chosen accrual time beyond pointing to an inapplicable statute.

In addition, even if § 9613(g)(3) applied to the CERCLA contribution claim, Defendants make no effort to establish the appropriate accrual time for the HSAA claim beyond noting that the HSAA is normally construed consistent with CERCLA. That general point may be true for many matters, but it is not evidently true for statute of limitations issues, especially where the limitations period is related to a settlement with a California state agency.

## IV. 220 W. Gutierrez, LLC's Motion

A. **Summary Judgment is Inappropriate on 220 LLC's CERCLA, HSAA, Nuisance, and Trespass Claims Because Disputed Material Questions of Fact Exist Regarding Goss-Jewett's Responsibility for Releases at the Property**

220 LLC points out that the Court had previously stated that "there is no bona fide dispute that some release happened for which Goss-Jewett is responsible." Dkt. No. 659 at 6. At the time, the Court thought that was the case based on the record before it, but it turns out that the record is less definitive than the Court had perceived.

No one disputes that there is massive PCE contamination under and emanating from the Property. Geological experts from both sides largely seem to agree that the locus of the pollution is at or around the former location of the above ground storage tanks used to store PCE during the operation of Tri-County and Goss-Jewett. Occam's razor certainly suggests that the entities that stored massive amounts of PCE for decades in large tanks above the epicenter of significant PCE ground and water contamination are probably the ones responsible for it. However, this kind of deductive reasoning based on circumstantial evidence is not sufficient to allow the Court to enter summary judgment against Goss-Jewett, even if only on bare liability.[8]

220 LLC seeks contribution from the various Defendants under CERCLA and the HSAA. CERCLA provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f).

> To establish a *prima facie* case under § 9607(a), the plaintiff must show that (1) the property at issue is a

---

[8] 220 LLC acknowledges that specific allocation of responsibility is not available through its motion and only seeks a ruling that Goss-Jewett is responsible for *some* release at the Property.

11

> "facility" as defined in 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of a "hazardous substance" has occurred; (3) the "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendants are in one of four classes of persons subject to liability under § 9607(a).

Carson Harbor Vill. v. Cty. of Los Angeles, 433 F.3d 1260, 1265 (9th Cir. 2006). The HSAA serves the same or similar purposes as CERCLA, adopts many of the same components as CERCLA, and is generally interpreted consistent with CERCLA.

Some of these factors are effectively undisputed, at least for the purposes of these motions. There is no question that PCE is a "hazardous substance" or that Tri-County and Goss-Jewett would qualify as "operators" of the "PCE distribution facility," as defined in 220 LLC's amended crossclaim.[9] The dispute is whether a "release" occurred from the "PCE distribution facility" "operated" by Tri-County or Goss-Jewett at the Property that has caused 220 LLC to incur response costs.

Perhaps surprisingly, there is no direct evidence of a release of PCE by Tri-County or Goss-Jewett on the Property. Without sufficient evidence of a release, summary judgment cannot be granted on any of 220 LLC's claims, statutory or common law. The evidence presented to the Court shows several basic possibilities for releases during the Tri-County and Goss-Jewett occupation of the Property.

220 LLC repeatedly raises innuendo about the condition of the above ground tanks and the concrete slab underneath the tanks. But there is

---

[9] The "PCE distribution facility" is defined as "[t]he premises, ASTs, hoses, nozzles, pipes, pipelines, equipment, and installations that Cross-defendants operated at the Property." Dkt. No. 660 ¶ 92. Each of the various cross-defendants is alleged to be liable due to being "an owner and/or operator of the PCE distribution facility during times when PCE was disposed of at and/or from that facility and to the Property and the Site." Id. ¶ 95.

12

no actual evidence that either tank ever leaked PCE. The evidence only shows that the tanks were rusty in appearance, the concrete slab was somewhat sunken from the weight of the tanks, and that there was some cracking and staining on the slab. The Court has not seen any evidence that these conditions definitively prove that the tanks were leaking. 220 LLC incorrectly states that the California Regional Water Quality Control Board Abatement Order found that the above ground tanks were leaking, see 220 LLC RJN, Ex. 4, but even if that were the finding, it would obviously be hearsay if offered to prove that the tanks did, in fact, leak and cause the contamination. Further, Plaintiffs' and 220 LLC's geological experts take the position that due to the depth and size of the contamination, it must have been caused by relatively large, sudden releases of PCE which discounts the possibility of slow leaks from the tanks over time.[10]

Multiple witnesses have acknowledged that small quantities – *i.e.*, drops – of PCE would escape from hoses or containers during the transfer of PCE. However, those witnesses also appear unanimous in stating that quantities this small of PCE would evaporate almost instantly into the air and did not reach or remain in the soil. The various geological experts also appear to agree that these kinds of tiny releases would not have persisted in the ground and could not have been the source of the contamination that caused 220 LLC to incur response costs.

There is one witness report of an incident where a tank being filled with PCE that was sitting in the back of a truck overflowed. But that witness also clearly stated that the PCE was almost entirely contained in the truck, very little PCE actually reached the ground, and that the

---

[10] The Court, of course, isn't foreclosing the possibility that the tanks leaked and were a cause of the contamination. Even a slow, unnoticed leak from a very large tank over a period of years could possibly cause significant contamination. The Court has been given close to no context for how large the releases would have to have been to have caused the contamination or how large of a leak from the tanks could have persisted without being noticed and repaired.

13

people involved, including the witness himself, took immediate action to soak up what small amount of PCE might have reached the ground so that it did not remain in the environment. See Stone Decl. Ex. 22 (Anderson Depo. Tr.) at 62-66; 202-19.

There is evidence that in addition to the above ground tank area, a "secondary" release area exists in the former warehouse area. 220 LLC concludes that this means that PCE was spilt during transfer between containers in the warehouse during either Tri-County or Goss-Jewett operations. But again, there is no direct evidence of releases there and a possible release can only be inferred based on circumstantial evidence. At summary judgment, inferences are made in favor of the non-moving party, not the moving one.

The best documented releases of PCE related to the Site were by common carrier drivers after delivering PCE to the Property. On at least some occasions, these drivers released residual PCE from the hoses used for delivery into the public sewer drain in the street. However, these were neither released by Tri-County or Goss-Jewett employees nor were they actually released on the Property or other property controlled by Tri-County or Goss-Jewett.[11] Defendants' position is that these releases can account for the entirety of the observed PCE contamination at the Site – other than perhaps for cross-contamination from alleged releases at a nearby Caltrans property.

This is the state of the evidence as the Court can best perceive it based on what has been provided in the summary judgment motions. As noted, logic and circumstantial evidence suggest that there were releases by Goss-Jewett or Tri-County at the Property and, after a trial,

---

[11] 220 LLC glosses over the problem that the hose releases were not indisputably at the "facility" "operated" by Tri-County or Goss-Jewett that it has alleged and that neither Tri-County nor Goss-Jewett indisputably "controlled" the hoses such that they would qualify as part of the relevant "facility" as defined by 220 LLC. The Court also overlooked this wrinkle in its November 18, 2019 order that placed responsibility for the hose releases on Tri-County.

14

the Court may find that there were releases by Goss-Jewett or Tri-County (or both). But when ruling on a summary judgment motion the Court is obligated to make inferences in favor of the non-moving party, not in favor of the moving party no matter how sensible those inferences might seem.[12] 220 LLC seems to misperceive its burden as showing that there is substantial evidence that a release occurred. There undoubtably is substantial evidence that a release occurred at a facility operated by Tri-County or Goss-Jewett, but the standard is whether it is *undisputed* that one occurred and that is not the case.

### B. The Contribution Claims Against 220 LLC Are Barred by the Statutory Contribution Bar Defense

It is undisputed that 220 LLC entered into an administrative settlement with the DTSC. CERCLA provides that "[a]person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2).

This would normally provide a person in 220 LLC's position a defense from contribution actions. However, the Intervenors and Individual Defendants argue that the § 9613(f)(2) contribution bar should not apply in this case because 220 LLC and the DTSC provided insufficient notice of the settlement.

There is no dispute that notice of the settlement was posted in the California Regulatory Notice Register on January 9, 2015. That notice clearly stated that a settlement was being entered into between 220

---

[12] It might be possible to grant summary judgment based on purely circumstantial evidence. However, in a situation such as this one, where after a review of the evidence the Court does not have a firm and completely confident impression of what occurred, it is clear that summary judgment should be denied. See also So. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003) (party with burden of proof must establish "beyond controversy every essential element" of its claim in order to be granted summary judgment).

15

LLC and the DTSC regarding the Property.  Defendants argue that this notice was insufficient because they were not given direct, actual notice at the time despite being known potentially responsible parties and because the published notice did not note that 220 LLC was seeking a contribution bar.

Defendants' arguments are unpersuasive.  The published notice pointed any reader to the text of the settlement – available on the DTSC website – that was free to view and plainly discussed a contribution bar.  But even if that were not sufficient, by operation of the CERCLA statute settlement with a state administrative agency implies the imposition of a contribution bar.  Defendants fail to cite any authority to suggest that the operation of this statutory contribution bar needed to be explicitly noted in the published notice.

The failure to provide direct, actual notice to known potentially responsible parties is somewhat problematic but ultimately does not defeat 220 LLC's statutory immunity.  First, there is no explicit statutory requirement that direct notice be given.  Arguably, DTSC policy required actual notice of the settlement to be provided to known potentially responsible parties, but Defendants fail to cite any authority that a failure to follow state administrative policy destroys the contribution protection provided by CERCLA.  Second, there is no question that at least the Intervenors were aware of the settlement, if not at the time it was entered, then certainly before it became final and operative.  In fact, they petitioned DTSC to reevaluate the settlement based on comments they provided in a letter on July 8, 2016.  See Stone Decl., (Dkt. 725), Ex. 35. [13]

---

[13] The Court also notes that the Intervenors' present assertion that they required actual direct notice is, at the very least, in tension with their implicit position that there is no means to provide direct notice to Goss-Jewett or the Estate Defendants because they have no representatives.  It is also in tension with their assertion in their July 8, 2016 letter to the DTSC that "Goss-Jewett's Officers and Insurance Carriers Are Not Potentially Responsible Parties."

16

## V. Conclusion

The moving Individual Defendants' motion for summary judgment is GRANTED. Intervenors' motion for summary judgment is GRANTED with respect to the RCRA claim and DENIED in all other respects. 220 LLC's motion is GRANTED with respect to its contribution bar defense and DENIED in all other respects.[14]

IT IS SO ORDERED.

Date: July 14, 2020

*Dale S. Fischer*
Dale S. Fischer
United States District Judge

---

[14] Given the manner in which the motions were resolved, the Court did not need to reach a number of issues that were raised such as 220 LLC's other affirmative defenses. The Court does not express an opinion on these other issues. The Court also did not need to reach the vast majority of the evidentiary objections that were raised because the objected-to evidence was not material to the resolution of the motions. Many of the objections are to lawyer characterizations of documentary evidence. The Court has, of course, reviewed the actual documents, not the lawyers' descriptions of them.